(127 So. 841)

## KNIGHT v. WATSON.

### 7 Div. 934.

Supreme Court of Alabama.

April 10, 1930.

Hugh Reed, of Center, for appellant.

E. O. McCord & Son, of Gadsden, and Irby Keener, of Center, for appellee.

BOULDIN, J.

W. T. Knight sued John I. Watson to recover damages for breach of a contract wherein defendant employed plaintiff to sell certain real estate, defendant agreeing to take a fixed price, and plaintiff to have any excess he might obtain as compensation. Plaintiff having found a purchaser ready, able, and willing to purchase defendant refused to perform.

Plea No. 5, to give its substance, alleges the contract was void, in that plaintiff had no license as a "real estate broker" or "real estate salesman" issued by Alabama Real Estate Commission as required by Act approved August 27, 1927, Gen. Acts 1927, p. 335.

The affirmative charge was given for defendant.

The controlling questions are: (1) Was plaintiff—appellant—in violation of the above statute? (2) If so, does such statute render contracts made without a license illegal and void, defeating all recovery for commissions, etc.?

On the first proposition appellant contends he was not engaged in the business of a "real estate broker" or "real estate salesman" within the meaning of the act.

The evidence came solely from plaintiff and his witnesses. As affects this question, it tended to show: Plaintiff, Knight, was not prior to nor since this one transaction engaged in any way in the real estate business. He was engaged in logging in Etowah county. Mr. Watson, defendant, owned certain lots in the city of Gadsden. He wanted to sell them. Learning that Knight, a former ac-

quaintance, was in the neighborhood, he sent him word by Mr. Clay to come and see him about selling the lots for him. Knight saw Mr. J. F. Slone of Gadsden about the lots, who forthwith offered to buy them at $3,500. Knight then went to see Watson, saying nothing of his interview with Slone, and got a contract to sell them at $1,250, Knight to have what he could get above that price. Knight then got a check for $100 earnest money from Slone, turned it over to Watson and made arrangement for Watson to come to Gadsden the next day, make the deed and receive payment of the balance purchase money. Then he came to Gadsden. Watson declined to go on, telling Mr. Slone that his wife was not willing to sign the deed. Mr. Slone's check was returned. Knight sues for $2,250.

A "real estate broker" and a "real estate salesman" are defined by section 2 of the Alabama Real Estate Commission Act. General Acts 1927, p. 335, Michie's Code 10112 (1) et seq. In the first part of section 2 (page 336) a real estate broker is defined as one "who, for a compensation or valuable consideration, sells or offers for sale * * * any real estate * * * as a whole or partial vocation." If this stood alone, it would seem to apply to engaging in the business, not to one exclusive transaction, such as this.

But the same section further declares: "One act for a compensation or valuable consideration of buying or selling real estate of or for another * * * except as herein specifically excepted * * * shall constitute the person * * * a real estate broker or a real estate salesman within the meaning of this act."

The specified exceptions then follow, among them this (Acts 1927, p. 336):

"The provisions of this Act shall not apply to any person, co-partnership, association or corporation, who as owner or lessor shall perform any of the Acts aforesaid with reference to property owned or leased by them, or to the regular employees thereof, with respect to the property so owned or leased, where such acts are performed in the regular course of, or as an incident to, the management of such property and the investment therein," etc.

Further exceptions bear no relation to the present case, save as they disclose legislative caution in excepting cases much less likely to be held within the act.

The carefully guarded way in which the above-quoted exception is limited to regular employees performing acts in the regular course of or as incident to the management of the property seems not to take without the act a person who for profit takes occasion to engage in one act, making a sale of property as to which he has no relation as a regular employee of the owner. We must conclude the statute includes this plaintiff as a real estate broker in this transaction. The general purposes of the act, which we now discuss, seem to reinforce such view. If a revenue measure only, a privilege license tax for engaging in a business, our conclusion might be different.

██ A statute imposing a license tax as a revenue measure merely, although declaring the doing of business without such license unlawful and affixing a penalty as a method of enforcement, does not render void and unenforceable contracts made without such license. Sunflower Lumber Co. v. Turner Supply Co., 158 Ala. 191, 48 So. 510, 132 Am. St. Rep. 20; Morgan v. Whatley & Whatley, 205 Ala. 170, 87 So. 846; Smith v. Sharpe, 162 Ala. 433, 50 So. 381, 136 Am. St. Rep. 52.

But an act under the police power, designed to regulate the business, to protect the public against fraud and imposition, requiring a license as evidence of qualification and fitness, and prohibiting any act of business under penalty, unless such license is first obtained, does render such contracts illegal, void, and unenforceable in actions for the recovery of compensation and the like. Bowdoin v. Alabama Chemical Co., 201 Ala. 582, 79 So. 4; Sunflower Lumber Co. v. Turner Supply Co., supra; Woods v. Armstrong, 54 Ala. 150, 25 Am. Rep. 671.

The act in question is of the latter class. Its title reads:

"To define, regulate, and license real estate brokers and real estate salesman; to create a State Real Estate Commission; and to provide a penalty for a violation of the provisions hereof."

"To act as a real estate broker or real estate salesman" without a license is made unlawful. Section 1, p. 335.

A violation of the act is made a misdemeanor. Section 12.

A commission is created to administer the act, with power to make regulations. Section 3.

"Licenses shall be granted only to persons who are trustworthy and competent to transact the business of a real estate broker or real estate salesman in such manner as to safeguard the interests of the public, and only after satisfactory proof has been presented to the Board." Section 4.

The commission may refuse license after a hearing (section 9); may revoke a license after a hearing for fraudulent acts specified (section 8).

The spirit of the entire act is manifest. Indeed, a revenue license was already required for engaging in the brokerage business.

Appellant calls attention to a provision of section 12 reading thus (page 345):

"The law shall not be construed to release any person from civil liability or criminal prosecution under the general laws of this State."

Taken in its setting, this provision relates to "any person" violating the act as indicated by the first clause of that section. We do not think its effect is to impose a liability on outside persons which would not exist under general law as applied to statutes of this class.

No question of fraudulent concealment by the agent as against the principal is presented by the pleadings, and we need not consider the argument on this line in appellee's brief.

The trial court properly gave the affirmative charge for defendant because of illegality of the contract relied upon by the plaintiff.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.