192 So. 285

## RATTRAY v. W. P. BROWN & SONS LUMBER CO.

### 7 Div. 481.

Court of Appeals of Alabama.

Oct. 3, 1939.

Rehearing Denied. Oct. 31, 1939.

[1] 238 Ala. 439.

Hood & Murphree, of Gadsden, for appellant.

Reed & Reed, of Center, for appellee.

SAMFORD, Judge.

The complaint consisted of two counts. Count 1 was the common count. Count 2 was as follows: "Plaintiff claims of the defendant one thousand dollars and for cause of action states that in January, 1937, the defendant employed plaintiff to look up and find timber lands which the defendant desired to purchase in Cherokee and Dekalb Counties and agreed to pay to plaintiff a commission of five (5) per cent of the purchase price of all such lands he found and brought to their attention and plaintiff says that between January 1st, 1937 and December 1st, 1937, he found and brought to the attention of the defendant various and sundry tracts of all land under said agreement which it bought on which commissions became due to plaintiff in the sum stated which defendant has failed or refused to pay, hence this suit."

Eliminating defendant's pleas in abatement and demurrers thereto, the defendant's demurrer to count 2, not necessary to be considered in this appeal, defendant filed pleas 1, 2, and 3, to which plaintiff filed demurrer as to plea 3, which will be hereinafter considered.

The contract between the parties is rather clearly stated in the testimony of the plaintiff and Mr. Roy. E. Loper, the defendant's responsible agent and who was defendant's general superintendent.

The plaintiff testified that in January, 1937, he had business dealings with the defendant with reference to locating timber for defendant, which continued for something like three months. Witness located timber for defendant for about three months; that within that period or at that time plaintiff had contact with Mr. Loper and Mr. Brown, representatives of the defendant company. Mr. Loper was the general superintendent of the defendant at that time and Mr. Brown was the owner of the business, or the defendant Lumber Company. He resided at Louisville, Kentucky; that both Mr. Loper and Mr. Brown talked with plaintiff with reference to locating timber; they wanted plaintiff to look up timber and see how much he could find, to see if they would be justifiable (justified) in locating a mill at Blanch. At that time they had not located the mill there. They told plaintiff to look up timber, that they would furnish a cruiser to cruise it, and if they bought the timber they would pay plaintiff five per cent commission if they got an ordinary deal and if they got a good deal they would pay him ten per cent, to which plaintiff replied by telling them he would look up timber and see what he could find, and that he did find several lots of timber and reported same to the defendant.

Mr. Loper, defendant's general superintendent, testified that: "We were checking the Alabama Power. Company's timber and had an option with the right to buy it

and while we were checking this timber I told Mr. Rattray (the plaintiff) we were reasonably sure we would buy it and anybody else around in this territory that had any timber for sale that if he would get the names and come and tell us who they were, that any timber that he could tell us about, after we checked it and if we bought it, we would allow him five per cent commission on any tract we bought, after he called our attention to it, that maybe it would be a couple of months before we could cut any and had our regular men to cruise and look after it." Later on Loper testified that he told plaintiff: " * * * we were there and had our feet on the ground and had our organization there and we would not need him to locate any other timber for us."

Loper, also, testified that if the timber showed up extraordinarily good the defendant was to pay the plaintiff ten per cent.

█ The foregoing statement of facts constitutes a contract binding on both parties when the terms of the contract have been complied with. 13 C.J., p. 247(17).

After all the testimony was in, the court, at the request of the defendant, gave the general affirmative charge upon which verdict was returned by the jury in favor of the defendant and a judgment rendered thereon.

The court, in overruling plaintiff's demurrer to plea 3 and giving at the request of the defendant the general affirmative charge, acted upon the theory that the contract as stated was void; in that the plaintiff had acted as a real estate broker in violation of Section 10112(1), Code of 1928, and subsequent subdivisions of said Section requiring a license for real estate broker, and giving a definition, or giving definitions, as to what constituted a real estate broker, together with other Sections regulating the business of brokers in real estate. In fact the trial Judge announced: "I don't see any distinction in this case and that of Knight v. Watson;" referring to the case of Knight v. Watson, 221 Ala. 69, 127 So. 841.

█ The foregoing presents the controlling question on this appeal; was the contract between the plaintiff and the defendant a contract whereby the plaintiff acted as a real estate broker as defined by Section 10112(2) of the Code of 1928. According to the definition as given in the cited Section, a real estate broker, within the meaning of the Statute, is any person, firm, partnership, co-partnership, association or corporation, who, for a compensation or valuable consideration, sells or offers for sale, buys or offers to buy, negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, rents or offers to rent, any real estate or the improvement thereon for others, as a whole or partial vocation. The definition of a broker as given in Webster's New Standard Dictionary is: "One who for a commission or fee, brings parties together and assists in negotiating contracts between them." This definition is generally accepted by all of the authorities as stated in the text 9 C.J. page 510(7), and authorities collated under Note 21.

█ Whatever may have been the relation between the plaintiff and any other parties, notably the Alabama Power Company as referred to in the testimony, there was nothing in the contract with the plaintiff which comes within the definitions as laid down by the statute and by the common definition as written by the Standard Dictionaries. The only service to be rendered by the plaintiff was to locate bodies of timber and report the same to the defendant. There was no obligation resting upon the defendant to buy this timber and no remuneration or compensation would be due to the plaintiff from the defendant, unless and until by negotiations between the defendant and the owners of the property the timber had been bought at a price satisfactory to the defendant.

In the case of Knight v. Watson, supra, a very different state of facts existed. In that case, Watson made a contract with Knight, whereby Knight was to sell Watson's property and to negotiate the sale of the property with such purchaser as he should find; in the instant case, there was no such contract, and the plaintiff was not in any manner to negotiate for the sale of the property or even to bring the parties together, as this was no part of his obligation. The two cases are entirely dissimilar.

█ In the case of Knight v. Watson, supra, the distinction is drawn between a Statute imposing a license tax as a revenue measure merely and an act under the police

power designed to regulate a business to protect the public against fraud, imposition, ignorance, and the like, requiring a license as evidence of qualification and fitness, and prohibiting any act of business under penalty, unless such license is first obtained. In that case the license required, under Section 10112(1) et seq., Code of 1928, comes under the latter class, but in order for a contract to be governed by the Act and subject to the penalties, it must be such as to come within the purview of the Statute.

For the above reasons the plaintiff's demurrer to defendant's plea 3 should have been sustained, and the trial judge committed error in giving at the request of the defendant the general affirmative charge.

The question propounded by appellant's counsel to the plaintiff while he was being examined as a witness: "Were you ever engaged in real estate business in your life?" calls for testimony entirely immaterial. The question in this case is not what business the plaintiff had been engaged in, but what was the effect of his contract with the defendant.

The same is true of the question propounded to plaintiff: "State whether you had anything to do with negotiating the price of that timber." According to plaintiff's contention and the testimony as given, if he did have anything to do with assisting in the making of the contract between plaintiff and owners of the timber it was entirely without the terms of the contract.

The court erred in permitting the defendant to prove that the Alabama Power Company paid plaintiff a commission on their sale of timber to the Brown Lumber Company, such testimony was res inter alios acta, and not relevant to the issues here.

Under the contract as testified to by the plaintiff, he would be entitled to recover five per cent upon such bodies of timber purchased by defendant upon information furnished by this plaintiff before the contract was terminated by the defendant, and this would be true, though the purchase was made subsequent to the termination of the contract.

For the errors above pointed out, the judgment is reversed and the cause is remanded.

Reversed and remanded.