Tyrus M. DORMAN, Plaintiff-Appellee,

v.

PAN–AMERICAN INVESTMENTS, INC., a corporation, Defendant-Third-Party Plaintiff-Appellant,

v.

Emmett F. HILDRETH, Jr., and Allison V. Hildreth, Individually and as Executors of the Estate of Emmett F. Hildreth, Sr., Deceased, Third-Party Defendants-Appellants.

No. 78–2957.

United States Court of Appeals, Fifth Circuit.

Sept. 10, 1980.

Leon M. Capouano, Montgomery, Ala., for Hildreth.

Cleary, Lee, Porter, Evans & Rowe, L. Tennent Lee, III, Huntsville, Ala., for Pan-American.

Timberlake & Gammons, H. Kenan Timberlake, Huntsville, Ala., for Tyrus Dorman.

Before GODBOLD, TJOFLAT and SAM D. JOHNSON, Circuit Judges.

GODBOLD, Circuit Judge:

In this case plaintiff Tyrus Dorman is seeking to recover a finder's fee or a fee for the release of his purported leasehold interest in land that was sold to defendant Pan-American. The district court held in favor of Dorman on several alternate theories and awarded a fee of $34,900 with interest. We reverse and hold that Dorman is not entitled to a finder's fee because he was not a licensed real estate broker and he is not entitled to a fee for release of his interest in the land because he had no colorable interest to release.

## I. Facts

Pan-American Investments, Inc. is a land investment corporation. In 1973 Pan-American was looking for land to purchase. E. F. Hildreth, Sr. was the owner of a number of parcels of mountainous timberland in rural Alabama. Dorman, although not a licensed real estate broker, brought the two parties together, and on April 20, 1973, Pan-American and Hildreth entered into a land purchase agreement. This agreement provided for sale of 3,507 acres for $78 per acre, with $10,000 earnest money to be paid in advance and the balance paid over a term of years. The agreement also stated that "Mr. Tyrus Dorman is entitled to receive $10 per acre as his finder's fee," and "that I will convey to said purchaser all oil, gas and minerals and mineral rights as I may now possess." Pan-American was allowed six months in which to close the deal.

On July 20, 1973, before the sale was closed, but within the six month period, Hildreth died. Problems with title to the land were not cleared up by October 20, 1973, when the six months expired. Consequently Pan-American although financially able to buy the land, did not do so within the allowable period.

In November and December Pan-American had meetings with the Hildreth heirs. A new agreement was worked out for sale of the land. The contract entered into in December was similar to the April agreement with Hildreth, providing for the same purchase price and with interest computed from April 20. In addition, the $10,000 earnest money previously paid Hildreth was credited to the purchase price. There were, however, some differences in the terms. The title was still not clear, and Pan-American agreed to take the land "as is." The Hildreth heirs kept one-half of the mineral rights. No provision was included for Dorman to be paid a finder's fee.

Dorman previously had made other land deals with Hildreth. In 1971 he leased the mineral rights to Hildreth's land, including the land later sold to Pan-American. He leased this land in the hope of strip mining coal from it, as he was then doing with land leased from others. In 1972, before he had begun to mine Hildreth's land, Dorman's other strip mining operations were enjoined as a nuisance. The mineral lease with Hildreth provided that delay rentals of $100 per month were necessary to keep the lease in force before production began. It also stated that "when drilling or other operations are delayed or interrupted . . . as a result of some order, requisition or necessity of the government, or as a result of any cause whatsoever beyond the control of the Lessee, the time of such delay or interruption shall not be counted against Lessee . . . ."

After the injunction was issued against Dorman's strip mining (on lands leased from others), Dorman requested Hildreth to excuse him from the delay rental payments. This request was refused but Dorman stopped making the payments anyway.

In October 1972 at Hildreth's request Dorman signed a release of any interest in 520 acres covered under the mineral lease from Hildreth. In 1973 Dorman signed a release for land to be sold to Pan-American that had been under the mineral lease, although no such release was filed. Dorman never challenged Hildreth's assertions that the 1971 mineral lease had lapsed.

## II. Finder's fee

■ The Alabama Real Estate License Law makes it illegal for any unlicensed person "to negotiate or attempt to negotiate any real estate transaction" for a fee or

with the intent or expectation of collecting "a fee, commission or other valuable consideration." § 34–27–30 *Code of Alabama* 1975. Assuming that the April 20, 1973, contract is valid, Dorman's finder's fee is void and unenforceable because he was not licensed during this period of time. *Dillard v. Pan-American Investments, Inc.*, 347 So.2d 990, 991 (Ala.1977).

The district court held that this general rule should not apply to Dorman because he was a third-party beneficiary to the contract. There is a line of authority in Alabama that the defense of illegality, while open to the parties and those claiming under them, cannot be invoked by third parties. *See Marx v. Lining*, 231 Ala. 445, 165 So. 207 (1936); *Federal Mogul Corp. v. Univ. Construction Corp.*, 376 So.2d 716 (Ala.Civ.App.1979) *cert. denied* 376 So.2d 726. These cases do not support Dorman's position, however, because Pan-American was a party to the contract and Hildreth's heirs are claiming under a party to the contract. This is not a case of a stranger to the contract defending on a defect in the agreement. Dorman's status as a third-party beneficiary under the April 20 contract is simply irrelevant to the illegality defense.

III. Release of the mineral lease

 The district court also held that the April 20, 1973, agreement between Dorman and Pan-American was an agreement to convey Dorman's leasehold interest which could not be rescinded without Dorman's consent. For this interpretation to be valid Dorman must have had at least a colorable claim under the lease. *See* § 9–17–50 *Code of Alabama* 1975 (lessee required to execute release after lease expires). We hold, however, that Dorman had no colorable claim in the property sold to Pan-American. His 1971 lease had expired by its terms after Dorman failed to pay the delay rentals under it. Dorman tacitly acknowledged as much when he executed releases for portions of the land at Hildreth's request.

Dorman's interest in the property is not saved by the "escape clause" in the lease. The lessee has the burden of proof to establish that he was prevented from mining by one of the clauses provided in the lease. 3 The American Law of Mining, p. 465 (1964). Dorman has failed to show that there was any interruption or delay of operations on the leased land caused by government action. All that was shown was an injunction preventing strip mining on different pieces of land. The record does not reflect any showing that the injunction could have or would have been extended to the land Dorman leased from Hildreth.

REVERSED WITH DIRECTION TO ENTER JUDGMENT FOR DEFENDANT.