PER CURIAM.
This is a contract case. The question presented is whether Charles E. Culver-house acted as a real estate broker within the meaning of Code 1975, § 34-27 — 2(a)(2). This section defines a real estate broker as:
“Any person who, for a fee, commission or other valuable consideration, or who, with the intention or expectation of receiving or collecting a fee, commission or other valuable consideration, lists, sells, purchases, exchanges, rents, provides rent lists for a fee, leases, options or auctions real estate or the improvements thereon, or negotiates or attempts to negotiate any real estate transaction, advertises or holds himself out as engaged in the real estate business.”
The court found that Mr. Culverhouse was an unlicensed real estate broker and, thus, not entitled to recovery on his complaint. The very thorough opinion of the trial court is as follows:
“This case has been submitted on the Motion for Summary Judgment filed by the defendant James S. Culverhouse, Jr. (hereafter ‘James’) and Culverhouse Construction, Inc., a corporation (hereinafter ‘Cul-verhouse Construction’).
“The Plaintiff, Charles E. Culverhouse (hereinafter ‘Charles’), makes a claim in this case against James and Culverhouse Construction based. on an alleged agreement whereby either or both of James and Cul-verhouse Construction agreed to pay Charles a 5% fee if Charles would introduce either or both of James and Culverhouse Construction to a buyer who would purchase certain apartments owned by Culver-house Construction which it wished to sell.
“In support of his Motion for Summary Judgment, James contends that while he was President of Culverhouse Construction, he had no individual interest in the apartments and that any and all contracts with Charles were made by him in his capacity as President of Culverhouse Construction.
“In addition, both James and Culverhouse Construction contend that they are entitled to judgment as a matter of law because it is undisputed that Charles was not a licensed réal estate broker at the time the agreement made the basis of his claim was allegedly entered into or at the time when he performed the services for which he now claims that he is entitled to be compensated. Relying on the decision of the United States Court of Appeals for the Fifth Circuit in Dorman v. Pan-American Investments, Inc., 625 F.2d 605 (5th Cir. 1980), the defendants, James and Culverhouse Construction argue that the services contemplated to be performed and performed by Charles come within the definition of the activities carried on by a real estate broker under § 34-27-2(a)(2) Ala. Code 1975, and that since Charles was not a licensed real estate broker, any agreement for the payment of compensation to him for such activities or services is void and unenforceable.
“Charles has also moved for summary judgment contending that there was an agreement to pay him a 5% finder’s fee for finding a purchaser for the Willow Tree Apartments; that he found such a purchaser and is now entitled to receive compensation for his services. Charles argues that *35 he did not act as a real estate broker as that term is defined in § 34 — 27—2(a)(2), Ala. Code 1975 so that he is not barred from recovering the amount due him because of his failure to obtain a real estate broker’s license.
“The decisions of the Supreme Court of Alabama do distinguish between a person acting as a ‘real estate broker’ and a person acting as a finder.
“In Knight v. Watson, 221 Ala. 69, 127 So. 841 (1930), Watson, wishing to sell certain lots located in the City of Gadsden and owned by him, entered into an agreement with Knight to sell them at $1,250, Knight to have what he could get above that price.
“Knight obtained a $100 earnest money deposit from a purchaser with an arrangement whereby Watson would meet in Gadsden the following day, execute the deed and receive the balance of the purchase price from the purchaser. Watson then refused to consummate the transaction and the purchaser’s check was returned. Knight then made claim against Watson for the amount he was due to receive under his agreement with Watson.
“Affirming the judgment of the trial court in favor of the defendant, the Supreme Court held that Knight was not entitled to recover because he had been acting as a real estate broker as defined by the Alabama Real Estate Commission Act without being licensed as such. Finding that the Act requiring real estate brokers to be licensed was designated to regulate the business of real estate brokers, to protect the public against fraud and imposition, and to require the license as evidence of qualification and fitness, the Supreme Court held that any contract for the payment of compensation to a person for services provided as a real estate broker when that person was not licensed to perform such services was illegal, void and unenforceable.
“In Rattray v. W. P. Brown & Sons Lumber Co., 29 Ala.App. 93, 192 So. 285 (1939), Rattray made claim against the lumber company for the recovery of a commission of 5% of the purchase price of all lands he brought to their attention pursuant to an agreement under which the lumber company agreed to allow him 5% commission on any tract it bought after he, Rattray, called the lumber company’s attention to it.
“Reversing the judgment rendered by the trial court in favor of the defendant, the [Court of Appeals] held that Rattray did not act as a real estate broker in performing the services for which he sought compensation and that he was therefore not barred by his failure to obtain a real estate license since he was not required to have a license in order to act as a finder. The [Court of Appeals] stated:
“ ‘... The definition of a broker as given in Webster’s New Standard Dictionary is: “One who for a commission or fee, brings parties together and assists in negotiating contracts between them.”
“ ‘The only service to be rendered by the plaintiff was to locate bodies of timber and report the same to the defendant. There was no obligation resting upon the defendant to buy this timber and no remuneration or compensation would be due to the plaintiff from the defendant, unless and until by negotiations between the defendant and the owners of the property the timber had been bought at a price satisfactory to the defendant.
“ ‘In the case of Knight v. Watson, supra, a very different state of facts existed. In that case, Watson made a contract with Knight, whereby Knight was to sell Watson’s property and to negotiate the sale of the property with such purchaser as he should find; in the instant case, there was no such contract, and the plaintiff was not in any manner to negotiate for the sale of the property or even to bring the parties together, as this was not part of his obligation ... . ’
“Following the decision in Knight v. Watson, supra, the Supreme Court of Alabama affirmed the judgment of the trial court in Waldrop v. Langham, 260 Ala. 82, 69 So.2d 440 (1953), holding that the plaintiff, Wal-drop, was barred from recovering compensation for his services when they entailed the cruising of timber and assistance in the negotiation of sale of a certain large tract *36 of timber. The Supreme Court found that assistance in the negotiation of sale definitely required the plaintiff Waldrop to act as a real estate broker and he could not then recover compensation for his services as such without having had a real estate license.
“In Dillard v. Pan-American Investments, Inc., 347 So.2d 990 (Ala.1977), Dillard made claim against Pan-American for commission allegedly due him because of the purchase by Pan-American of ten tracts of land. A jury found in favor of Dillard. However, on Pan-American’s Motion for Judgment N.O.V., the trial judge set aside the verdict and granted judgment in favor of Pan-American on the ground that Dillard was barred from recovery because he had acted as an unlicensed real estate broker.
“On appeal, the Supreme Court of Alabama affirmed, finding that Dillard’s activities for which he claimed compensation came within the definition of real estate broker as defined by the statute and by Webster’s New Standard Dictionary. Dillard’s own testimony concerning his activities were [sic] that he found the properties were for sale and the price at which they were offered. If the terms were within the boundaries established by Pan-American, Dillard would make an introduction of the buyer to the seller.
“Distinguishing the decision of the [Court of Appeals] in Rattray, supra, the Supreme Court concluded:
“ ‘. . . There is no doubt that Dillard’s activities constituted more than merely finding and reporting, as was done in Rattray; he actually “negotiated” the preliminaries between the sellers and Pan-American.
“ ‘In Handley v. Shaffer, 177 Ala. 636, 59 So. 286 (1912) we said:
“* * * A real estate broker strictly speaking is but a middleman whose office it is to bring the principals together, with the understanding that they are to negotiate with each other, and trade upon such terms as may be mutually satisfactory. * * *” ’
“The testimony of Charles taken on oral deposition in this case on December 5, 1980 indicates that Charles testified as follows concerning the activities in which he engaged and the services which he rendered pursuant to the agreement which is the basis for his claim for compensation in this case:
‘Q. Okay. After you had that conversation with Wilson where he said in effect that he’d like more information about the apartments — -whatever you testified to a minute ago, what did you do with respect to your cousin, the defendant, and Mr. Wilson Dinsmore and your own affairs in this order; what did you next do?
‘A. I contacted Jim, and I don’t remember whether it was by phone or personally, but I think it was personally and not by phone, and I told him that this guy had shown interest and wanted to set up a meeting and I asked Jim whenever he would be available to meet the guy. And, I don’t remember exactly, but he said maybe a day, and I said, “okay,” and I got in touch with Wilson and set a date and a time, and we met at Wilson’s office — Jim and me and Wilson.
‘Q. So, it is a fact, then, that after you found out that Jim would go to meet him you then contacted Wilson and found out when Wilson would be available?
‘A. Yes.
‘Q. So, you coordinated the time?
‘A. Yes, sir.
‘Q. And you got him in there?
‘A. Yes, sir.
‘Q. All right. Did you go with your cousin, the defendant to Wilson Dins-more’s office when he first went to see Mr. Dinsmore?
‘A. I met him at Wilson’s office. I told him the address and met him at the office.
‘Q. All right. Were you present, then, when he first met Dinsmore; and if so, did you remain throughout the course of their meeting?
‘A. Yes, I introduced Jim and Wilson in Wilson’s office and made the introduction and that was about it, because at that *37 point Wilson and Jim picked up on asking questions back and forth.
‘Q. You stayed in the room, then?
‘A. Yes.
‘Q. The whole time that your cousin, the defendant was in the room with Mr. Dins-more?
‘A. I think that meeting was about 15 minutes, or so; yes.
s}5 * !§! :{{ sf; s}:
‘Q. Now, what next transpired in this Willow Tree Apartments thing following that meeting, the first meeting with your cousin, the defendant, in Mr. Dinsmore’s office?
‘A. Jim and I were talking, and I guess this was a few days after that, and he said something about he’d worked out some of the figures and had some rough figures down on paper, and was I going to go with him down there to talk to Wilson on the second meeting. I said, “yes.” I don’t think that we travelled together, rode together, in particular, to that second meeting, but at the second meeting — I was at the second meeting with Jim and with Wilson, and was—
‘Q. Was anyone else there?
‘A. No, sir.
‘Q. Okay. Go ahead. What happened then at that second meeting?
‘A. It was kinda like a reintroductory thing where I said, “Wilson, you remember my cousin, Jim,” and, “Jim, you remember Wilson.” “Yes.” ... ’
“The testimony of Charles indicated that he did more than act as a finder. He arranged for the meeting between the buyer and the seller and was also present at the meeting at which time he introduced them to each other. When they met on a second occasion, Charles was also present at that time and reintroduced the buyer and seller to each other.
“Under the decision of the Supreme Court of Alabama in Dillard, supra, and the decision of the United States Court of Appeals for the Fifth Circuit in Dorman, supra, the conduct and activities of Charles in introducing James to Dinsmore, the purchaser, is sufficient to bring him under the definition of real estate broker as defined in § 34 — 27—2(a)(2) Ala. Code 1975.
“Because Charles engaged in activities as a real estate broker without being licensed as a real estate broker, the agreement to pay him compensation for his services is void and unenforceable. Bickley v. Van Antwerp Realty Corp., 271 Ala. 117, 122 So.2d 275 (1959); Faulkner v. Stapleton Insurance & Realty Corp., 266 Ala. 437, 96 So.2d 761 (1957).”
We are in accord with the conclusion reached by the trial court and therefore affirm the judgment.
AFFIRMED.
TORBERT, C. J., and FAULKNER, AL-MON, EMBRY and ADAMS, JJ., concur.