<strong>PENMONT, LLC and Penman Group, LLC, Plaintiffs,</strong>

v.

<strong>BLUE RIDGE PIEDMONT, LLC, Blue Ridge Capital, LLC, Fritz McPhail, and Eric Wilenksy, Defendants.</strong>

<strong>Civil Action No. 2:08cv93–MHT.</strong>

United States District Court,<br/>M.D. Alabama,<br/>Northern Division.

April 8, 2009.

John Michael Bowling, Joseph Lofton Kerr, Jr., Friedman, Leak, Dazzio, Zulanas & Bowling, P.C., Birmingham, AL, for Plaintiff.

George Robert Parker, Bradley Arant Rose & White LLP, Montgomery, AL, Halsey G. Knapp, Jr., Jonathan E. Hawkins, Foltz Martin, LLC, Atlanta, GA, for Defendant.

## OPINION AND ORDER

MYRON H. THOMPSON, District Judge.

Plaintiffs Penmont, LLC and Penman Group, LLC bring this lawsuit against defendants Blue Ridge Piedmont, LLC, Blue

Ridge Capital, LLC, Fritz McPhail, and Eric Wilensky, claiming state-law fraud, breach of contract, and unlawful practice of real-estate brokerage, all arising out of a single aborted commercial real-estate transaction.[1] Blue Ridge Piedmont has filed a breach-of-contract counterclaim against Penman Group for fees it paid to third parties on plaintiffs' behalf. The court's diversity-of-citizenship jurisdiction has been invoked. 28 U.S.C. § 1332.

The case is before the court on defendants' motion for summary judgment on all claims, including the counterclaim, in their favor. The motion is granted in part and denied in part for the reasons that follow.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's role at the summary-judgment stage is to view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

In the spring of 2007, defendants approached Penman Group with a prospective real-estate deal in which Blue Ridge Piedmont would sell Penman Group a portion of the Montgomery Mall in Montgomery, Alabama. The tenant of the property was a franchise known as Steve & Barry's.

Defendants did not own the property, but had an option to purchase the property from the owner, Haywood Whichard, with whom defendants had a longstanding relationship. Whichard offered to sell defendants the property at a reduced price if they would put up $ 50,000 non-refundable earnest-purchase money. After negotiating the price, defendants agreed to purchase the property, on the condition they could, in turn, find a buyer willing to purchase the property. Defendants paid Whichard the $ 50,000 after they had contacted potential buyers and plaintiffs had expressed interest in the property.

Defendants, who had done prior business with plaintiffs' managers, sent plaintiffs materials about the property and the Steve & Barry's franchise. The materials were issued under the name of Blue Ridge Capital, LLC, which employed Wilensky and McPhail.

During a conference call shortly thereafter, defendants indicated they would assist plaintiffs in conducting "due diligence" and further indicated that any fees for these services would be included in the agreed-upon transaction price. Around this time, defendants also informed plaintiffs that they had lined up a lender who could provide financing and that this lender was familiar and comfortable with the franchise. Plaintiffs indicated a desire to find their own financing.

On April 6, 2007, Penman Group and Blue Ridge Piedmont executed a "Purchase Agreement," which outlined how the transaction would proceed. First, Blue Ridge Piedmont would acquire the property from its current owner. It would then immediately sell the property to Penman Group. The agreement also provided that Penman Group would pay $ 50,000 in ear-

---

**1.** Although the complaint includes a fourth count for breach of agency, counsel clarified in pretrial conference that this was not a separate claim.

nest money to Blue Ridge Piedmont and that this money would be retained by Blue Ridge Piedmont as liquidated damages if the transaction were not completed. A merger clause provided that the written agreement was the complete and final agreement of the parties, and another clause stated that the property was being purchased "as-is."

Also around this time, defendants told plaintiffs that, regardless of the language in the purchase agreement, defendants would return the earnest money if the deal fell through. The parties dispute the exact terms of this agreement.

After the purchase agreement was signed, the parties continued to work to complete the transaction. At some point, defendants agreed to obtain certain reports for plaintiffs with the understanding that they would be reimbursed; the precise terms of this agreement are disputed.

Meanwhile, plaintiffs applied for a loan from Bank Independent, and were refused. When it became apparent that Bank Independent would not issue a loan, defendants put plaintiffs in touch with a mortgage broker and sent plaintiffs a proposed agreement to compensate defendants for their assistance in securing financing. Plaintiffs never signed the agreement, but maintain that the parties agreed that they would work out compensation at a later time if the financing came through.

Plaintiffs claim that they were not able to obtain financing from defendants' lender because, during a conference call regarding the loan application, Wilensky stated that the Steve & Barry's franchise was in a "hostile tenant relationship" with the landlord, and this statement caused the bank to refuse to finance the transaction on favorable terms. Wilensky denies making any such statement. Plaintiffs contend that defendants misled them regarding the quality of the franchise as a tenant.

A short time later, Penman Group indicated that it was not willing to move forward with the transaction. The deal fell apart, and Blue Ridge Piedmont retained the purchase money. Plaintiffs then filed this lawsuit to recover the money and other expenses associated with the transaction. Blue Ridge Piedmont filed a counterclaim for $ 19,428.75 against Penman Group for breach of an oral contract providing, according to Blue Ridge Piedmont, that Penman Group would reimburse it for certain third-party reports.

## III. DISCUSSION

### A. Penmont's claims

■ Defendants challenge whether Penmont may bring *any* claims, on the ground that it was not a party to the purchase agreement or otherwise a part of the transaction. The complaint alleges that Penmont was the "putative assignee of Penman Group for the purpose of this transaction." Compl. ¶ 2. However, Penmont did not argue it was Penman Group's assignee in its opposition to defendants' motion for summary judgment.[2] Because Penmont did not raise the argument in opposition to defendants' motion to dismiss, the argument is deemed abandoned. *See Brasseler, U.S.A I, L.P. v. Stryker Sales Corp.* 182 F.3d 888, 892 (C.A.Fed.(M.D.Ala.)1999) (district court need not consider assertions made in pleadings but not in opposition to a motion for summary judgment); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994) (claim not raised in cross motions

---

**2.** Nor is there any evidence before the court that Penmont was the assignee of Penman Group.

for summary judgment was properly treated as abandoned).

Penmont having abandoned any argument that it was the assignee of Penman Group, the court must conclude that there is no evidence, or even argument, that Penmont was a party to the disputed transaction. Thus, summary judgment will be granted on all of Penmont's claims.

## B. Penman Group's claims

### 1. Unlawful-practice-of real-estate-brokerage claim

Penman Group contends that the purchase agreement is void because defendants were acting as unlicensed real-estate brokers in violation of 1975 Ala.Code § 34–27–30 when they entered into the transaction. Penman Group argues that defendants sought valuable consideration (the profit they would make on the transaction) in exchange for their work closing the sale of the Steve & Barry's property. Defendants counter that they were not acting as real-estate brokers and that, in any case, they fell within an "owner-seller" exception to the statute because the purchase agreement identified Blue Ridge Piedmont as the seller. *See* 1975 Ala.Code § 34–27–2(b)(1) (exempting "[a]ny owner in the managing of, or in consummating a real-estate transaction involving, his or her own real estate or the real estate of his or her spouse or child or parent" from licensing requirement).

Contrary to defendants' assertions, the evidence reflects that none of the defendants owned the property when they approached Penman Group or when the purchase agreement was signed. Defendants' plan was to purchase the property only if they could find another buyer, and defendants never did purchase the property.

■ However, the court need not resolve the question of ownership, for even if defendants were acting as unlicensed real-estate brokers, the purchase agreement would not be void on that basis. The law does not void *every* contract entered into by an unlicensed real-estate broker, but rather those providing for *compensation* of the unlicensed broker. *See Knight v. Watson* 221 Ala. 69, 127 So. 841, 842 (1930) (contracts of unlicensed real-estate brokers are "illegal, void, and unenforceable in actions for the recovery of compensation and the like"); *Faulkner v. Stapleton Ins. & Realty Corp.*, 266 Ala. 437, 438, 96 So.2d 761, 762 (Ala.1957) (unlicensed real-estate broker may not enforce contract for commission); *Dillard v. Pan–American Investments, Inc.*, 347 So.2d 990, 991 (Ala. 1977) (same). Thus, even if Penman Group were able to show that defendants had violated the statute, it would only be able to void an agreement for compensation. Penman Group cannot plausibly contend that the purchase agreement was a contract creating a brokerage agreement or that the $ 50,000 earnest-purchase money was paid as compensation for brokerage services.

Accordingly, summary judgment will be granted on Penman Group's claim for unlawful practice of real-estate brokerage.

### 2. Fraud claims

Penman Group asserts that defendants engaged in fraudulent misrepresentation and fraudulent suppression of facts regarding the financial health of Steve & Barry's and the franchise's relationship with the landlord of the property and that these fraudulent assertions or omissions induced Penman Group to enter into the purchase agreement. Defendants deny making such representations or suppressing any information, and further contend that the "as-is" clause in the purchase agreement precludes either fraud claim.

■ Defendants' contention regarding the as-is clause is unavailing because Penman Group's fraud claims arise out of representations regarding Steve & Barry's,

not the property. The as-is clause provides: "Purchaser acknowledges that the *Property* is being sold 'AS–IS' without representation or warranty except as expressly set forth herein." Def. Exh. "B" at 5 (emphasis added). The plain language of the clause refers to only the property itself; it does not refer to Steve & Barry's or any other tenant. Thus, the as-is clause cannot properly be read to defeat Penman Group's fraud claim arising out of representations regarding Steve & Barry's. The court therefore turns to the merits of the fraud claims.

### a. Fraudulent misrepresentation

To make out a claim for fraudulent misrepresentation, Penman Group must show: "(1) that the representation was false, (2) that it concerned a material fact, (3) that it relied on the false representation, and (4) that actual injury resulted from that reliance." *Consol. Constr. Co. v. Metal Bldg. Components, L.P.*, 961 So.2d 820, 825 (Ala. 2007) (*quoting Boswell v. Liberty Nat'l Life Ins. Co.*, 643 So.2d 580, 581 (Ala. 1994)).

■ Penman Group contends that defendants represented that Steve & Barry's was in good financial condition and a good tenant; that these representations were false; that Penman Group relied on these representations in entering into the transaction; and that Penman Group lost the earnest money and lender's fee, as well as other expenses, as a result. Defendants deny making such representations and argue further that any statements they made were statements of opinion that cannot support a fraud claim.

Penman Group has put forward sufficient evidence for this claim to proceed. The financial well-being and quality of the Steve & Barry's franchise as a tenant would plainly be a material fact upon which Penman Group might rely in making the decision to enter into the transaction, and it is beyond dispute that, in trying to close the transaction, Penman Group spent money that it would not otherwise have spent. The conflicting testimony of the parties (as to whether defendants made the disputed representations, the content of such representations, whether the representations were false, and whether Penman Group relied on any such representations) thus precludes summary judgment on this claim. For the same reason, defendants' argument that their statements were statements of opinion cannot be decided at this stage. Although statements of opinion will not support a fraud claim, *Fincher v. Robinson Bros. Lincoln–Mercury, Inc.*, 583 So.2d 256, 259 (Ala.1991), whether a particular statement is opinion

> "depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties. The mere form of the representation as one of opinion or fact is not in itself conclusive, and in cases of doubt the question should be left to the jury."

*Harrell v. Dodson*, 398 So.2d 272, 274–75 (Ala.1981) (citations omitted). Because there are significant factual disputes in this case about what was said and when, this argument belongs before the jury. Summary judgment will therefore be denied on Penman Group's fraudulent-misrepresentation claim.

### b. Fraudulent suppression

■ Penman Group also asserts a fraudulent-suppression claim against defendants. A plaintiff making such a claim must demonstrate: "(1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act [or to refrain from acting]; and (4) that the defendant's action resulted

in harm to the plaintiff." *Bethel v. Thorn*, 757 So.2d 1154, 1162 (Ala.1999) (quoting *Booker v. United American Ins. Co.*, 700 So.2d 1333, 1339 n. 10 (Ala.1997)).

Penman Group contends that defendants acted as Penman Group's agents, which gave rise to a duty to disclose that Steve & Barry's was in poor financial health and had a poor relationship with the landlord; and that defendants never made such disclosures. Penman Group further contends that, had it known this information, it would not have signed the purchase agreement and incurred expenses associated with this transaction.

■ Whether defendants had a duty to disclose is a question of law. *Barnett v. Funding Plus of America, Inc.*, 740 So.2d 1069, 1074 (Ala.1999). A duty to disclose may be created either by a "confidential relations[hip]" between the parties, or from the "particular circumstances of the case." 1975 Ala.Code 6–5–102. Penman Group asserts that, in this case, the duty arose from a confidential relationship; it asserts that defendants acted as Penman Group's agents in the transaction. An agency relationship, which may be implied, arises from the consent of the parties. *Fisher v. Comer Plantation, Inc.*, 772 So.2d 455, 466 (Ala.2000). Consent may be implied "by deductions or inferences from the other facts and circumstances of the particular case, including the words and conduct of the parties." Penman Group has not produced sufficient evidence to infer consent. At most, Penman Group has shown that the parties worked together to try to complete the transaction under a pressing deadline. Penman Group makes much of defendants' assistance in seeking financing, as well as defendants' proposal that they be compensated for this assistance. However, this assistance was provided *after* the purchase agreement was signed and thus is not evidence of the parties' relationship (and corresponding duty to disclose) *prior* to the signing of the purchase agreement. Thus, no agency relationship was created.

■ Without an agency relationship, Penman Group's claim that defendants had a duty to disclose must fail. Alabama's "bright-line" rule is that, "in commercial transactions involving parties to arm's length negotiations[,] ... [t]he parties have no general obligation to disclose" absent specific and direct questions from the other party. *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So.2d 883, 892 (Ala.2005) (quotations and citations omitted). Penman Group does not assert that it made specific inquiries that gave rise to a duty to disclose, nor has it shown anything else that would remove the transaction from the purview of the bright-line rule.

Because Penman Group cannot show that defendants were under any obligation to disclose, it cannot make out a claim for fraudulent suppression. Accordingly, summary judgment will be granted on Penman Group's fraudulent-suppression claim.

### 3. Breach-of-contract and fraudulent-promise claims

Penman Group also contends that defendants breached an oral agreement to return the $ 50,000 earnest money if the transaction was not completed and alternatively that defendants fraudulently promised to return the money. Defendants concede that they promised to return the earnest money, but contend that the promise was conditioned on closing the deal with another party.

#### a. Breach of contract

To make out a breach-of-contract claim, Penman Group must show (1) a valid contract binding the parties, (2) its own performance under the contract, (3) the nonperformance of the defendants, and (4)

damages. *See State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 303 (Ala.1999). Penman Group has produced evidence that it agreed to enter into the purchase agreement in exchange for a promise that the earnest money would be returned if the deal did not close; it signed the purchase agreement; defendants failed to return the purchase money; and Penman Group lost the value of the purchase money.

■ Defendants contend that the oral agreement is defeated by the merger clause in the purchase agreement. Although a merger clause in a valid contract creates "a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties," *Ex parte Palm Harbor Homes, Inc.,* 798 So.2d 656, 660 (Ala.2001), in this case Penman Group contends that it was fraudulently induced into entering the written contract that contains the merger clause. Until the jury resolves whether Penman Group was fraudulently induced into entering that contract and thus whether the contract is void in all or part, defendants cannot rely on the merger clause to defeat Penman Group's claim that the oral contract was breached.[3]

Thus, summary judgment will be denied on Penman Group's breach-of-contract claim.

### b. Promissory fraud

Penman Group claims, alternatively, that the defendants fraudulently promised to return the earnest money if the transaction were not completed.

■ A claim for promissory fraud arises out of a defendant's promise to act or not to act. *Ex parte Michelin North America, Inc.,* 795 So.2d 674, 678 (Ala. 2001). Here, that promise is defendants'

allegedly unconditional promise to return the $50,000 if the deal did not go through. To make out a claim for promissory fraud, a plaintiff must show: "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." *S.B. v. St. James Sch.,* 959 So.2d 72, 101 (Ala. 2006) (quotations and citations omitted). In addition, the plaintiff must show that, "at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and ... that the defendant had an intent to deceive." *Id.* Such intent to deceive may be proven through circumstantial evidence. *Byrd v. Lamar,* 846 So.2d 334, 343 (Ala.2002).

■ Penman Group has put forth testimonial and documentary evidence from which a reasonable juror could conclude that defendants promised to return the purchase money unconditionally; that Penman Group relied on such promise in entering into the purchase agreement; that defendants did not intend to return the money if the deal fell through; and that defendants acted with the intent to deceive because they promised to return the money unconditionally but did not intend to return it unless they recovered the $ 50,-000 that they paid to the original seller.

Accordingly, summary judgment will be denied on Penman Group's promissory-fraud claim.

### C. Blue Ridge Piedmont's counterclaim

Defendants also seek summary judgment on Blue Ridge Piedmont's counterclaim for $ 19,428.75, for breach of contract. Blue Ridge Piedmont asserts that

---

3. Because there remains a dispute as to when the promise was made and under what conditions, the court does not reach defendants' argument that, if the promise to return the

money was made after the agreement was signed, Penman Group provided no consideration in exchange for the promise and it is unenforceable.

the parties agreed that it would obtain certain third-party reports and be reimbursed by Penman Group; that it obtained such reports; and that Penman Group has failed to pay the cost of the reports. Penman Group contends that any such agreement was conditioned on the transaction closing.

To make out their claim, defendants must show (1) a valid contract binding the parties, (2) their own performance under the contract, (3) the nonperformance of the [other party], and (4) damages. *See State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 303 (Ala.1999). This claim cannot be resolved on summary judgment, for the parties dispute the terms of any such oral agreement. Summary judgment will therefore be denied on Blue Ridge Piedmont's counterclaim.

For the foregoing reasons, it is ORDERED as follows:

(1) The motion for summary judgment on behalf of defendants Blue Ridge Piedmont, LLC, Blue Ridge Capital, LLC, Fritz McPhail, and Eric Wilensky (Doc. No. 50) is denied on (a) plaintiff Penman Group, LLC's claims for fraudulent misrepresentation, breach of contract, and promissory fraud and (b) defendant Blue Ridge Piedmont, LLC's counterclaim for breach of contract. These claims will go to trial.

(2) Said motion is granted in all other respects.