ADOLFO SAAVEDRA SOLÁ y su esposa VICTORIA FELICIANO, demandantes y apelantes, *v.* AUGUSTO SAAVEDRA RIQUELME y su esposa ANGELA BLASCO, demandados y apelados.

No. 6166.—*Sometido:* Mayo 3, 1933.—*Resuelto:* Febrero 24, 1934.

*E. Martínez Nadal, E. Martínez Rivera* y *M. García Méndez,* abogados de los apelantes; *José Sabater,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Adolfo y Fernando Saavedra eran dueños en común y de por mitad de una finca rústica de 301.30 cuerdas, hipotecada al Federal Land Bank of Baltimore por la suma de $5,000. Al tiempo de los sucesos descritos en la demanda, el límite de la cantidad que el banco podía prestar a cualquier persona era $10,000. Adolfo ya había obtenido $5,000 por virtud de otra hipoteca con el mismo banco. Como los Saavedra necesitaban más dinero para fines agrícolas, Adolfo finalmente hizo, de las 301.30 cuerdas, una venta nominal de 150.655 a Augusto Saavedra Riquelme, su hijo. Este convino en que, al obtener del banco la cantidad de $9,500 y ciertas acciones ascendentes a $500 más, entregaría el dinero a su padre, le endosaría las acciones y le traspasaría la finca con el solo gravamen del Banco. Se obtuvieron el dinero y las acciones del Banco. Entonces Augusto, después de haber entregado parte del dinero, se negó, previo requerimiento, a desprenderse del balance de los fondos así recibidos, ascendente a $5,138.69, y asimismo retuvo las acciones. Estos y otros hechos aparecen de la demanda, que fué excepcionada. La corte sostuvo la excepción previa.

[1, 2] Es innecesario considerar los varios remedios soli-

citados en la súplica de la demanda, toda vez que la Corte de Distrito resolvió que el contrato entre el padre y el hijo estaba viciado de fraude, y el padre nada podía recobrar. La corte resolvió que la combinación se hizo para burlar la ley y las reglas del Federal Land Bank of Baltimore; que el contrato era ilegal y contrario al orden público; y que las máximas: *In pari delicto potior es conditio defendentis* y *Ex dolo malo non oritur actio* eran aplicables, citando varias autoridades.

Según indican los apelantes, nadie está quejándose de que el banco mismo fué timado. El objeto primario de la supuesta combinación o redistribución de bienes fué obtener más dinero del banco, y hasta ahora nadie ha sugerido que las 301.30 cuerdas no eran, al tiempo de constituirse estas hipotecas, ampliamente suficientes para responder de los gravámenes. Cuando se hizo el alegado traspaso de padre a hijo, no se cometió delito alguno. Si el padre hubiese querido dar a su hijo la oportunidad de obtener este dinero para los usos del hijo, no habría surgido transacción ilegal alguna ni se habría cometido delito alguno contra las leyes de Puerto Rico. El contrato privado entre padre e hijo en manera alguna afectó o lesionó los intereses del banco, que presuntivamente tenía toda la garantía necesaria. Más de una persona estaban obligadas para con el banco, y éste podía proceder tanto contra el padre como contra el hijo en caso de que las garantías no resultaran suficientes.

Las máximas a que nos hemos referido pueden aplicarse mejor a casos en que la transacción inmediata entre las partes era fraudulenta, y no a algún resultado colateral.

El caso de los apelantes no depende de la supuesta transacción ilegal, sino de la promesa independiente del hijo. A nadie debe permitírsele enriquecerse como lo haría aquí el hijo. El flagelo de la ley no va tan lejos.

*Debe revocarse la sentencia apelada y devolverse el caso para ulteriores procedimientos no incompatibles con esta opinión.*