HILARIO SANTIAGO RIVERA, demandante, recurrente y recurrido, *v.* DR. E. MALDONADO SIERRA, demandado, recurrido y recurrente.

*Números:* R-64-13, R-64-16　　*Resueltos:* 19 de enero de 1965

---

*Dubón & Dubón,* abogados del recurrente y recurrido; *Fiddler, González & Rodríguez,* y *Luis F. Candal,* abogados del recurrido y recurrente.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El demandado encomendó al demandante gestiones relacionadas con su negocio de compra y venta de bienes inmuebles. En carta que le dirigiera con fecha 9 de diciembre de 1957 el demandado estipuló las condiciones bajo las cuales el demandante recibiría compensación por sus servicios. A continuación se copian:

"1.—En lo que concierne a la permuta de las fincas de mi propiedad, ubicadas en Trujillo Alto con Home Builders Corporation, su comisión será de 5% sobre el precio estipulado en la escritura mediante la cual se llevó a efecto la transacción, o sea, el 5% de $252,800.00 igual a $12,640.00.

"2.—En lo que concierne a la urbanización industrial ubicada en Hato Tejas, Ud. tendrá la exclusiva en la venta de la misma, ya sea vendida parcialmente en solares o en total.

"3.—En aquellos negocios en que Ud. haya intervenido y yo, haya sido el comprador, Ud. será el agente corredor al yo vender y percibirá una comisión del 2% del precio de venta.

"4.—En el negocio del mármol Ud. será el agente exclusivo vendedor del producto de la fábrica y recibirá una comisión de un 2% del total de las ventas."

Con fecha 3 de marzo de 1959 el demandado le comunica al demandante que:

"Han transcurrido catorce (14) meses y como no se le ha hecho posible a usted mover ninguna de estas propiedades, ni concertar ningún negocio definitivo en relación con ninguna de

ellas, por lo tanto, en vista de dicha situación, me considero justificado en modificar dicho convenio a los efectos de que usted tendrá derecho a percibir únicamente la comisión correspondiente a aquellas ventas que se efectúen con la intervención directa de usted."

El demandante instó el presente pleito alegando que "el demandado adeuda al demandante la suma de $100,000.00 por sus servicios como corredor de bienes raíces, bajo las estipulaciones de la carta-contrato que con fecha 9 de diciembre de 1957 le dirigiera al demandado. . .".

La demanda fue declarada con lugar. Se condenó al demandado en la suma de $33,340 de la cual se deduciría la cantidad de $5,211.85 que el demandado ya había satisfecho más $1,500 de honorarios de abogado.

Ambas partes solicitaron la revisión de la sentencia recaída. Consolidamos los recursos.

El demandante reclamó la comisión correspondiente a la venta de los siguientes inmuebles:

(a) Permuta de una finca en Trujillo Alto

(b) Venta de una finca conocida por Islote Juan Pérez

(c) Venta de Urbanización Industrial

(d) Venta de la Finca Calderón.

El demandado admitió adeudar las comisiones correspondientes a las fincas (a) y (b).

El juez sentenciador le reconoció el derecho a recibir comisión por la venta de la finca marcada con la letra (c). No así en cuanto a la finca (d). El demandante apunta como error haberle negado su derecho a recibir comisión por la venta de la Finca Calderón. El demandado sostiene que fue error condenarle a pagar comisión por la finca Urbanización Industrial.

Consideraremos en primer término el caso de la Finca Calderón. Las partes convinieron que en aquellos negocios en que el demandante hubiera intervenido y el demandado hubiera sido el comprador, el demandante sería el agente

corredor al venderse la finca y percibiría una comisión del 2% del precio de venta (cláusula 3 de la carta-contrato.)

Para disponer de este apuntamiento basta considerar que la prueba establece que el demandado inició las conversaciones para la compra de esta finca directamente con la familia Calderón y le hizo claro al demandante que él no debería intervenir en la transacción. El tribunal de instancia hizo las siguientes determinaciones sobre esta cuestión:

"Contra las instrucciones expresas dadas por el demandado el demandante—en el sentido de que no interviniere en la adquisición de la llamada 'Finca Calderón'—éste habló con uno o dos de los miembros de la Sucesión de Don Casto Luis Calderón, informándoles que el Dr. Maldonado estaba interesado en adquirir la finca.

"Estas gestiones, que sin autorización alguna practicó el demandado, (sic) no tuvieron ningún resultado. En diciembre 21 de 1957, el demandante (sic)—mediante la intervención de Carlos Calderón, corredor de bienes raíces emparentado con los Calderón —compró a éstos la 'Finca Calderón,' compuesta de 539.949 cuerdas."

Así, no cometió error el tribunal de instancia al no conceder comisión por la venta de la Finca Calderón ya que el derecho a recibirla estaba condicionado a que hubiera intervenido en la adquisición de la finca, según lo dispone la cláusula tercera de la carta-contrato.

Pasemos a considerar ahora lo relacionado con la Finca Urbanización Industrial. En la adquisición de este inmueble no intervino el demandante. Su derecho a recibir comisión está basado en la cláusula 2 de la carta-contrato que transcribimos anteriormente.

El tribunal de instancia "como cuestión de hecho y de derecho resuelve que, aun cuando el demandante no gestionó las ventas de las fincas 'Islote Juan Pérez' y 'Urbanización Industrial', pero intervino directa y provechosamente en la compra de la primera de estas fincas, el demandado viene obligado a satisfacerle una compensación equivalente al 2%

de los precios de ventas de dichas fincas. Este derecho lo adquirió el demandante en virtud del convenio celebrado entre las partes, consignado en la citada carta del 9 de diciembre de 1957, que designaba al demandante como agente corredor exclusivo en la venta de dichos inmuebles y le garantizaba una 'comisión del 2% del precio de venta.' "

En lo que concierne a la finca "Islote Juan Pérez" el demandado admitió que adeudaba la comisión correspondiente. En la determinación anterior el tribunal de instancia hace claro que el demandante no intervino en la compra ni en la venta de la finca Urbanización Industrial. Sin embargo, aparentemente lo consideró cubierto bajo la misma disposición de la carta-contrato que cubre al Islote Juan Pérez y que le garantiza al demandante una comisión de 2%. (Cláusula 3.) Pero esta disposición, sólo se refiere a aquellos inmuebles en que el demandante "haya intervenido y yo, haya sido el comprador." Y en la finca Urbanización Industrial el demandante no intervino en la compra ni en la venta. El derecho del demandante, si alguno tuviera, surgiría de la cláusula 2 antes transcrita. Pero esa cláusula fue dejada sin efecto [1] por la carta del 3 de marzo de 1959, y la finca fue vendida el 31 de julio de 1961 sin la intervención del demandante.

Éste apunta que como no se recurre de los fundamentos de la sentencia y sí de ésta, procede determinar que es correcta la dictada por el tribunal a quo al efecto de concederle comisión por la venta de la finca Urbanización Industrial, por el hecho de que durante la vigencia del contrato, o sea antes de ser rescindido el 3 de marzo de 1959 el demandado había convenido en vender la Urbanización Industrial y luego había rescindido el contrato. Afirma que es entonces cuando

---

[1] El demandante en el recurso en que es recurrente admite a la página 5 de su alegato que el demandado rescindió el convenio de 7 de diciembre de 1957 por su carta de 3 de marzo de 1959. Es la inferencia razonable de la determinación de hechos del tribunal sentenciador al efecto de que el demandado había enviado al demandante la carta del 3 de marzo de 1959.

surge su derecho a recibir la comisión. Invoca el caso de *Torres* v. *Arbona, Jr.*, 72 D.P.R. 769 (1951) donde resolvimos que perfeccionado un contrato de compraventa por gestiones de un corredor, éste tiene derecho a su comisión "aun cuando tal contrato sea posteriormente rescindido, lo que no puede afectar a los derechos del corredor de fincas, que debe percibir la retribución correspondiente conforme al artículo 1711 del Código Civil."

Hay una diferencia en la situación que ahora consideramos y las que tuvimos ante nos en el caso de *Arbona*. Allí el corredor hizo las gestiones que culminaron en la celebración del convenio que luego fue rescindido. Ciertamente tenía derecho a cobrar por éstas. El hecho de que luego de concertado el convenio las partes lo rescindieran no debe afectar su derecho a cobrar su comisión. Aquí el corredor no intervino en las gestiones que culminaron en la celebración del convenio. Nada hay por lo cual él tenga derecho a recibir la comisión. Su derecho a recibirla sólo surgía cuando se realizara un contrato definitivo en la venta de la Urbanización Industrial. (²) Y ya hemos visto que este contrato de compraventa se llevó a cabo luego del demandado haber rescindido el contrato celebrado con el demandante en diciembre de 1957.

Erró, pues, el tribunal de instancia al concederle comisión por la venta de la finca Urbanización Industrial.

*Se modificará la sentencia de acuerdo con los términos de esta opinión.*

---

(²) Además, en todo caso, *Torres* v. *Arbona, Jr.*, 72 D.P.R. 769 (1951) establece la regla general en ausencia de convenio entre las partes. Aquí, las partes tenían un acuerdo especial que presuponía la formalización de un contrato de compraventa, no meramente su concertación.