COLEGIO INTERNATIONAL SEK PUERTO RICO, INC. y GESTIÓN EDU-
CATIVA, INC., demandantes y recurrentes, *v.* ANTONIO R.
ESCRIBÁ, demandado y recurrido.

*Número:* RE-88-103 *Resuelto:* 5 de abril de 1994

*Carlos R. Ríos Gautier* y *Ramón A. Cancio*, abogados de los recurrentes; *Herman W. Colberg*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso nos permite expresarnos sobre la aplicabilidad, o no, de la Ley Núm. 139 de 14 de junio de 1980, Ley para Reglamentar la Profesión de Corredor de Bienes Raíces en Puerto Rico,[1] al "corredor ocasional" —esto es, a una persona que, aun cuando no posee la licencia requerida por la referida Ley, otorga un contrato con otra mediante el cual esta última se compromete a pagarle una comisión por la venta de su propiedad— y, en adición, sobre la validez, y exigibilidad, del contrato otorgado en esas circunstancias.

---

[1] 20 L.P.R.A. sec. 3001 *et seq*.

I

Los demandantes Colegio Internacional Sek Puerto Rico, Inc. (en adelante Sek) y Gestión Educativa, Inc. (en adelante Gestión), corporaciones domésticas autorizadas a hacer negocios en Puerto Rico, son dueñas de unos terrenos localizados en el Barrio Juan Sánchez de Bayamón.[2] En determinado momento, éstas le solicitaron al Lcdo. Siro Gutiérrez, funcionario en Puerto Rico de dichas Corporaciones, que buscase un comprador para los referidos terrenos. El licenciado Gutiérrez acordó, verbalmente con el Lcdo. Antonio Escribá, pagarle a éste una comisión ascendente al 4% del precio de venta de los terrenos si éste conseguía un comprador para los mismos.[3] *Cabe señalar que el licenciado Escribá no es, ni en ningún momento ha sido, corredor de bienes raíces ni tiene licencia de corredor.*[4] A su vez, aunque él ha servido de notario autorizante en diversas transacciones en que han intervenido las Corporaciones demandantes, *el licenciado Escribá no es ni era abogado de las mismas.*

En cumplimiento de su encomienda, el licenciado Escribá efectuó varias gestiones, entre ellas, con el Ing. Rafael Torrens, Vice Presidente de la Compañía Levitt & Sons (en adelante Levitt), que culminaron en que Levitt se interesara en los referidos terrenos. Luego de múltiples conversaciones entre las partes, Levitt opcionó los terrenos, otorgándose las correspondientes escrituras de opción

---

[2] El propósito original de las mencionadas Corporaciones era establecer un colegio en dichos predios, pero estos planes se frustraron por razones no relacionadas al caso de autos.

· [3] El Lcdo. Antonio Escribá ejercía la profesión de abogado-notario en sociedad de gastos, compartiendo oficina y secretaria con el licenciado Gutiérrez.

[4] Véase Informe sobre Conferencia Preliminar entre Abogados, fechado 1ro de abril de 1987, pág. 3, donde lo señalado quedó convenido entre las partes en la Estipulación Núm. 4. En adición véase la respuesta a la pregunta Núm. 9 de la contestación a Requerimiento de Admisiones radicado por el licenciado Escribá el 5 de febrero de 1987.

ante el licenciado Escribá como notario;(⁵) en cada una de éstas comparecieron las mencionadas Corporaciones representadas por el licenciado Gutiérrez en su calidad de secretario-tesorero de las mismas. En la cláusula sexta, de cada una de las dos (2) escrituras otorgadas, se dispuso que si Levitt ejercitaba la opción, la escritura de compraventa se otorgaría ante el propio notario, a saber, el Lcdo. Antonio Escribá.

Las dos 2 opciones de compra, que vencían el 15 de agosto de 1983, fueron prorrogadas por ciento ochenta (180) días. Al vencer el término, surgió una controversia entre las partes respecto al día en que vencían las opciones. Las Corporaciones sostenían que las opciones vencían el 11 de febrero de 1984, sin que el optante hubiera ejercitado las mismas; por otra parte, Levitt sostenía que los funcionarios de Sek y de Gestión —así como el licenciado Escribá— le habían dado a entender que las referidas opciones vencían el 15 de febrero de 1984. Levitt "ejercitó" las opciones el 13 de febrero de 1984 y sostuvo que las había ejercitado en tiempo.

En vista de esta discrepancia Levitt, en su calidad de optante, radicó una causa de acción ante el Tribunal Superior, Sala de San Juan (Civil Núm. 84-918), exigiendo el cumplimiento específico del contrato. Este caso desembocó en una estipulación mediante la cual se transigieron las reclamaciones y se llegó a un acuerdo, lográndose materializar la compraventa.(⁶)

Posteriormente, las Corporaciones Sek y Gestión radi-

---

(⁵) Las escrituras son las Núms. 6 y 7, otorgadas el 5 de abril de 1983.

(⁶) En la estipulación que convinieron las partes, *se variaron un tanto los términos de la compraventa*: el acuerdo final fue por un precio adicional de $200,000; el pago se haría en efectivo en vez de a plazos como anteriormente se había acordado. En adición, en la cláusula número cinco (5) del escrito de estipulación, las corporaciones demandantes se comprometieron a otorgar a Levitt & Sons una carta de garantía para responder por cualquier reclamación que le hiciera el licenciado Escribá por concepto de comisión de corretaje y honorarios notariales dejados de devengar por no otorgarse ante él las escrituras de compraventa de los terrenos. A la fecha de la vista del caso, las demandantes habían pagado por esa garantía la suma de $3,125.

caron, el 13 de marzo de 1986, una acción sobre Sentencia Declaratoria ante el Tribunal Superior de Puerto Rico, Sala de San Juan (Civil Núm. 86-1380), en la cual solicitaron que se declarara nulo el contrato de corretaje —suscrito entre el licenciado Escribá y el licenciado Gutiérrez, en representación de las Corporaciones— por contravenir el mismo lo dispuesto en los Arts. 4 y 1207 del Código Civil, 31 L.P.R.A. secs. 4 y 3372, ya que el licenciado Escribá no estaba legalmente autorizado para efectuar dicho contrato por no tener licencia de corredor de bienes raíces, según lo requiere la Ley para Reglamentar la Profesión de Corredor de Bienes Raíces en Puerto Rico.[7]

Por su parte, el licenciado Escribá radicó una demanda,[8] por incumplimiento de contrato y cobro de dinero, en contra de Sek y de Gestión, en el Tribunal Superior, Sala de San Juan (Civil Núm. 86-1521). En la misma, éste alegó que las referidas Corporaciones incumplieron con su obligación de pagarle el 4% del precio de la compraventa de los terrenos antes mencionados en concepto de comisión, la cual ascendía a $76,000. Esta demanda *fue consolidada* con la de Sentencia Declaratoria (Civil Núm. 86-1380), anteriormente radicada por las referidas Corporaciones.

---

[7] La Ley para Reglamentar la Profesión de Corredor de Bienes Raíces en Puerto Rico establece, en la sec. 3011, los requisitos que ha de cumplir una persona para adquirir la licencia de corredor de bienes raíces y así poder ejercer la profesión. La referida sección reza:

"*Sec. 3011. Licencia de corredor de bienes raíces—Requisitos*

"La persona que aspire a ejercer la profesión de corredor de bienes raíces en Puerto Rico deberá reunir los siguientes requisitos:

"(a) Radicar ante la Junta una solicitud debidamente jurada y en el impreso que a esos efectos dicha Junta provea;

"(b) presentar un certificado de buena conducta otorgado por la Policía de Puerto Rico;

"(c) ser mayor de 18 años;

"(d) ser graduado de escuela superior o tener certificado de equivalencia;

"(e) aprobar los exámenes que ofrezca la Junta;

"(f) pagar la cantidad de cincuenta (50) dólares en cheque certificado o giro postal a nombre del Secretario de Hacienda."

[8] *La referida demanda se radicó en adición a la reconvención, a los mismos efectos, incluida en la contestación a la demanda de Sentencia Declaratoria sometida por el licenciado Escribá el 11 de abril de 1986.*

El tribunal de instancia dictó sentencia, el 21 de diciembre de 1987,(⁹) *desestimando* la demanda sobre Sentencia Declaratoria (Civil Núm. 86-1380) *y declarando con lugar la reconvención radicada por el licenciado Escribá.* El tribunal de instancia concluyó que el contrato de corretaje acordado entre las partes era válido y, en adición, que la Ley para Reglamentar la Profesión de Corredor de Bienes Raíces en Puerto Rico no aplica a un contrato aislado celebrado por persona que no se dedica habitualmente a actuar como corredor de bienes raíces. En consecuencia, ordenó a las Corporaciones demandantes a pagarle al demandado Escribá la suma de $83,000 por concepto de comisión de corretaje, las costas, gastos, más $1,000 de honorarios de abogado. Declaradas sin lugar, por el foro de instancia, unas mociones radicadas por la parte demandante sobre determinaciones de hechos adicionales y reconsideración, las Corporaciones demandantes presentaron ante este Tribunal un recurso en revisión de la sentencia dictada, el 21 de diciembre de 1987, por el Tribunal Superior de Puerto Rico, Sala de San Juan, en el referido caso sobre sentencia declaratoria.(¹⁰)

---

(⁹) Se archivó en autos copia de la notificación de la sentencia el día 22 de diciembre de 1987.

(¹⁰) Las cuestiones de derecho que plantea el Recurso de Revisión, págs. 8–9, según las Corporaciones recurrentes, son las siguientes: "(1) si es nulo el contrato de corretaje del recurrido por razón de que la Ley Para Reglamentar la Profesión de Corredor de Bienes Raíces no valida los contratos aislados de corretaje celebrados por personas sin licencia de corredor que no se dedican habitualmente a actuar como corredores de bienes raíces; (2) de resolverse esta primera cuestión a favor del recurrido, si su contrato de corretaje es de todos modos nulo por el conflicto de intereses entre la función de notario y la de corredor o intermediario a comisión en un negocio de bienes raíces; (3) de ser no obstante válido el contrato de corretaje, si la comisión debe computarse a base del precio de compraventa que se había pactado con Levitt como resultado de la gestión del recurrido o a base del precio acordado en la transacción de un pleito en la cual el recurrido no tuvo intervención alguna; (4) independientemente de lo anterior, si procede declarar que el recurrido carece de causa de acción contra Levitt para cobrar la comisión de corretaje y los honorarios notariales; (5) de proceder que así se declare, si el recurrido debe indemnizar a la recurrente por haberse negado a reconocer que no tenía causa de acción contra Levitt por dichos conceptos; y (6) de confirmarse que el recurrido tiene derecho a la comisión de corretaje, si se justifica la imposición de honorarios de abogado a las recurrentes por temeridad."

Expedimos el auto de revisión el 14 de abril de 1988. Elevada la exposición narrativa de la prueba que ordenamos, radicados los correspondientes alegatos y estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

## II

Nuestra jurisprudencia ha analizado el contrato de corretaje y sus consecuencias en contadas ocasiones. En el normativo caso de *Torres v. Arbona, Jr.*, 72 D.P.R. 769, 776 (1951), se definió el contrato de corretaje como una figura jurídica, una especialidad comprendida en el mandato, por cuyas genéricas disposiciones ha de regirse. A su vez se expresó que lo establecido por el "Código Civil en relación con el mandato es de estricta aplicación al contrato de corretaje". *Torres v. Arbona, Jr.*, ante, pág. 776. El contrato de corretaje es uno de regulación moderna y sus antecedentes "surgen de la figura del mandato de entronque civilista dentro del ordenamiento del Derecho Romano". F. Pérez Rivera, *Hacia la identificación del contrato de corretaje de bienes raíces dentro del ordenamiento jurídico puertorriqueño*, 50 (Núms. 1–2) Rev. C. Abo. P.R. 43–45 (1989).

En *Dumont v. Inmobiliaria Estado, Inc.*, 113 D.P.R. 406, 417 (1982), este Tribunal expresó que el contrato de corretaje es "un contrato sui géneris que no está regulado expresamente en nuestro Código Civil". En dicho caso acogimos los pensamientos de Castán a los siguientes efectos:

El contrato de corretaje se ha de regir por las normas establecidas por las partes (sentencia de 18 de octubre de 1956), y, en su defecto, como el Código civil no lo regula en particular, habrá de suplir el vacío legal aplicando las disposiciones generales contenidas en los títulos I y II del libro IV del mismo Código (sentencias de 10 de enero de 1922 y 28 de febrero de 1957), los usos y costumbres propios de su naturaleza, cual se previene en los arts. 1.258 y 1.287 de dicho Cuerpo legal (sen-

tencia de 28 de febrero de 1957), y, en cuanto en cada caso puedan ser oportunas, las reglas que le sean afines de aquellos contratos típicos con los que guarda íntima relación, como el mandato, la comisión mercantil y el arrendamiento de obras y servicios (sentencias de 8 de febrero y 18 de octubre de 1956). (Énfasis suprimido.) *Dumont v. Inmobiliaria Estado, Inc.*, ante, págs. 417–418.

■ Abonando a la definición que nos ofrece nuestra jurisprudencia, en el referido caso de *Dumont v. Inmobiliaria Estado, Inc.*, ante, recurrimos al conocido tratadista Puig Brutau,[11] quien define el contrato de corretaje como

... aquel por el cual uno se obliga a pagar a otro (el corredor) una remuneración (la comisión) por la información de la ocasión para concluir un contrato o por la mediación en un contrato. El corredor interviene para mediar entre dos personas a las que pondrá en relación para que contraten entre sí. *El derecho a cobrar la comisión depende de la efectiva celebración de un contrato en el que el corredor no interviene como parte.* (Énfasis suplido y escolio omitido.)[12]

---

[11] J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 480.

[12] En la obra del tratadista alemán Enneccerus se distinguen tres (3) tipos de contratos de corretaje, *a saber*:

"a) El contrato *unilateral* de corretaje o puro. El corredor *no se obliga a la actividad,* y su prestación es únicamente una *condición* de su derecho a recibir la comisión. Pero esto no excluye que haya de ajustarse a las exigencias de la *fidelidad contractual* (Sec. 242), o sea, no le es lícito obrar en contra de los intereses del mandante, tiene que obrar discretamente y no le es lícito abandonar caprichosamente y en daño del mandante la actividad voluntariamente comenzada, etcétera, etc.

"b) El contrato *bilateral* de corretaje, en el cual también el corredor asume una *obligación dirigida a indicar la ocasión para concluir un contrato o a mediar en un contrato.* Semejante contrato cae ciertamente dentro del concepto del contrato de corretaje, pero es a la vez un contrato de servicios, ya que se promete a título oneroso una actividad (no el resultado), constituyendo, por tanto, una clase especial del contrato de servicios (contrato de servicios de corredor) al que se aplican, en primer lugar, las disposiciones sobre el contrato de corretaje, pero además, en tanto que de éstas y de la esencia del contrato de corretaje no resulte una especialidad, las disposiciones sobre el contrato de servicios.

"c) El contrato *bilateral* de corretaje (por cierto poco frecuente) por el cual el corredor *promete el resultado mismo*, por ejemplo, obligándose a proporcionar una hipoteca de una determinada cuantía y bajo determinadas condiciones (intereses, etc.). A este contrato (contrato de obra de corredor) se aplican las disposiciones sobre el contrato de corretaje y, subsidiariamente, las relativas al contrato de obra." L. Enneccerus, *Tratado de Derecho Civil*, Ed. Bosch, 1958, Vol. II, Parte I, pág. 561.

Según Puig Peña,([13]) del contrato de corretaje se derivan dos (2) consecuencias, a saber:

*a)* Que lo característico de la actuación del mediador consiste en que se limita a poner en relación directa o indirecta a los futuros contratantes, *sin participar él personalmente en el contrato*, no como representante de una de las partes, ni como simple mandatario o comisionista suyo; es decir, queda siempre fuera del contrato resultante de su actividad.

*b)* Que es de esencia al contrato de corretaje la existencia de un *premio o retribución*. Sobre la cuantía y procedencia del mismo, nos remitimos a lo dicho más adelante. (Énfasis en el original.)([14])

 Uno de los elementos esenciales del contrato de corretaje lo es la "comisión", a pagarse al corredor, la cual ha sido definida en el campo de los bienes raíces como "la cantidad que se le paga a un corredor de bienes raíces por sus servicios, y que por lo general es un porcentaje del precio de venta. La comisión siempre se negocia con el cliente. Cobrar una comisión 'fija' se considera un acto de fijación de precios y es ilegal". Mariaca y Maloy, *Bienes raíces: leyes y prácticas en Puerto Rico*, Publishing Resources, Inc., 1987, pág. 182.

En el citado caso de *Torres v. Arbona, Jr.*, ante, pág. 778, expresamos, en relación con el derecho que tiene el corredor a cobrar la comisión, que:

La jurisprudencia americana se pronuncia casi unánimemente en el sentido de que en casos de esta índole basta que el

---

([13]) F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Eds. Pirámide, 1976, Vol. IV, pág. 210.

([14]) Igualmente, Puig Peña, pág. 212, analiza los tres (3) elementos del contrato de corretaje como a continuación:

"a) *Elementos personales.*—Son dos: *el comitente o mandante*, que es la persona que encarga los servicios de corretaje, y el *corredor*, que es la que se compromete a prestarlos. Su capacidad parece que es la general para contratar, aunque respecto del corredor cabe aceptar un criterio generoso, en este sentido.

"b) *Elementos reales.*—Son también dos: *los servicios de mediación y el premio o retribución* por los mismos. En cuanto a los servicios de mediación, han de ser determinados y lícitos. ...

"c) *Elementos formales.*—Este contrato no está sujeto a formalidad de ninguna clase, y por tanto, carece de requisitos de forma."

corredor a quien se ha encomendado la venta de determinada propiedad encuentre un comprador dispuesto, deseoso y en condiciones económicas de comprar (*ready, willing and able*) para que el corredor tenga derecho a la comisión, así como en el sentido de que cuando existiere *el pacto de que el corredor tendrá derecho a su comisión cuando quede consumado el contrato, el derecho a la comisión subsiste en aquellos casos en que la no consumación se ha debido al fraude, culpa o mala fe del vendedor.* Desde luego, si el corredor o presunto comprador tenían conocimiento de los defectos o vicios de que adolecía la cosa el vendedor no es responsable, puesto que entonces no puede imputársele mala fe, culpa o negligencia. (Citas y escolio omitidos y énfasis suplido.)

En el referido caso de *Torres v. Arbona, Jr.*, expresamos, en adición, que cuando el dueño de una finca solicita los servicios de un corredor para que venda una propiedad y éste encuentra un comprador, queda perfeccionado el contrato de compraventa entre el vendedor y el comprador, y el corredor tiene derecho a su comisión aun cuando no se consumase el contrato por el comprador haberlo rescindido luego.[15]

■ En relación a este punto, en *Lamboy v. Irizarry*, 73 D.P.R. 331, 333 (1952), este Tribunal resolvió que para que surja el derecho a cobrar comisión por parte de un corredor de negocios, a quien se le encomienda la venta de una propiedad, es necesario "(1) que la venta se hubiera realizado, con la cual el contrato de compraventa hubiera quedado consumado; o (2) que el contrato de compraventa hubiera quedado perfeccionado—aun sin llegarse a consumar la venta—y el mismo se hubiera rescindido voluntariamente ...".

No obstante lo antes expresado —en vista de los hechos específicos del caso hoy ante nuestra consideración y en vista de la aprobación en el año 1980 de la antes citada Ley Núm. 139— debemos resolver si al licenciado Escribá le

---

[15] Véase *Santiago Rivera v. Maldonado Sierra*, 91 D.P.R. 629, 634 (1965), donde se reafirma el caso de *Torres v. Arbona, Jr.*, 72 D.P.R. 769 (1951).

son aplicables las disposiciones de la mencionada Ley Núm. 139 y, en consecuencia, si el contrato por él otorgado es uno válido y exigible, esto es, si él tiene derecho a cobrar la comisión pactada.

## III

Como anteriormente expresáramos, el tribunal de instancia resolvió que la citada Ley Núm. 139 no aplica a una persona que en una sola ocasión actúa como corredor de bienes raíces. El referido tribunal entendió que la Ley Núm. 139 sólo concierne a las personas que se *dedican habitualmente* a la profesión de bienes raíces. *Erró al así resolver.* Veamos por qué.

En la Exposición de Motivos de la referida Ley Núm. 139 se discute *la necesidad del Estado de reglamentar el ejercicio de la profesión de corredor de bienes raíces.* A esos efectos se expresó:

> La Asamblea Legislativa entiende que la labor que desempeña esta clase profesional en nuestra comunidad es una de gran importancia para el pueblo puertorriqueño. Es, por tal razón, necesario que se provean unos mecanismos que le garanticen al pueblo un servicio competente y confiable requiriendo que todo aspirante a una licencia de corredor de bienes raíces deba aprobar un examen sobre esa materia.
>
> Por la importante labor que desempeña esta clase de profesionales en la economía del país, para garantizar la debida protección del pueblo y para que las transacciones en bienes raíces se conduzcan dentro de las más puras y estrictas normas de ética profesional, honestidad y trato justo para todas y cada una de las partes envueltas, es necesario que el Estado reglamente el ejercicio de la profesión de corredor de bienes raíces. Exposición de Motivos de la Ley Núm. 139, ante, 1980 Leyes de Puerto Rico 545.

Se expresa, en adición, en la referida Exposición de Motivos que la Junta Examinadora de Corredores de Bienes Raíces, que se crea en la Ley Núm. 139, ante, constituye el mecanismo mediante el cual "el Estado impone ciertas con-

diciones y criterios para el ejercicio de la profesión, *procurando que el pueblo pueda confiar en que toda persona que ostente una licencia de corredor de bienes raíces sea una competente y digna de confianza"*. (Énfasis suplido.) Leyes de Puerto Rico, ante, pág. 545.

Resultan sumamente pertinentes al asunto o controversia hoy ante nuestra consideración las disposiciones de las secs. 3002(a), 3023 y 3024 de la citada Ley Núm. 139, las cuales establecen:

*Sec. 3002. Definiciones*

A los efectos de este Capítulo, los siguientes términos tendrán el significado que a continuación se expresa:

(a) "Corredor de bienes raíces" es la persona que, *poseyendo la licencia para ejercer la profesión de corredor de bienes raíces* que expedirá la Junta Examinadora de Corredores de Bienes Raíces de Puerto Rico, *actúe habitualmente como intermediario*, mediante pago o promesa de pago de una comisión mutua y previamente convenida, entre las partes que acuerden llevar a cabo una transacción de compraventa, promesa de venta, opción de compra, permuta, alquiler, administración de propiedades, o en el ofrecimiento, promoción o negociación de los términos de una venta, opción de compra, promesa de venta, alquiler, administración, o permuta de bienes raíces localizados en o fuera de Puerto Rico; Disponiéndose, sin embargo, que no se considerará como dedicarse al negocio de bienes raíces en Puerto Rico, para propósitos de este Capítulo, cualquier tipo de transacción relacionada con la compra, venta, alquiler, permuta o administración de un bien inmueble en la que el vendedor sea el propietario de dicho bien inmueble y actúe en beneficio propio y no como intermediario entre dos (2) clientes.

. . . . . . . . .

*Sec. 3023. Excepciones*

Las disposiciones de este Capítulo no se aplicarán:

(a) a los abogados en sus relaciones profesionales con sus clientes con respecto a actos y contratos referentes a los bienes de sus clientes;

(b) a los abogados nombrados de acuerdo con las leyes vigentes en Puerto Rico en relación con los bienes de los poderdantes;

(c) a las personas investidas con facultades legales en los testamentos con respecto a los bienes de los causantes;

(d) a las personas que actúen por designación de los tribuna-

les de justicia en todos los casos sujetos a trámites judiciales en los tribunales de Puerto Rico, ya sean éstos del Estado Libre Asociado de Puerto Rico o del Gobierno de Estados Unidos.

### Sec. 3024. Penalidades

Toda persona que *sin la licencia correspondiente* se dedicare al ejercicio de la profesión de corredor de bienes raíces en Puerto Rico, o que emplee a otra persona sin licencia para este ejercicio, *incurrirá en un delito menos grave* y, convicta que fuere, será castigada con una multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares, o cárcel por período no menor de un (1) mes ni mayor de seis (6) meses, o ambas penas a discreción del tribunal. (Énfasis suplido.)

Igualmente pertinente, en adición, resulta ser lo dispuesto por el Art. 16 del Reglamento Núm. 2874, promulgado el 25 de mayo de 1982 por la Junta Examinadora de Corredores de Bienes Raíces de Puerto Rico, el cual establece que:

Artículo 16 – Posesión de Licencia

Ninguna persona, excepto aquellas excepciones que aparecen en la ley, podrán ejercer la profesión de Corredor de Bienes Raíces sin tener una licencia expedida por la Junta.

### IV

A nuestro entender, la correcta solución de la controversia hoy ante nuestra consideración exige que recordemos —y repasemos, aun cuando brevemente— las reglas básicas de hermenéutica que establece nuestro Código Civil y, en adición, la jurisprudencia pertinente a las mismas. Como es de todos conocido, dispone el Código Civil que cuando "la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu",[16] y, quizás aún más importante, que cuando las expresiones de una ley son dudosas, el "medio

_____

[16] 31 L.P.R.A. sec. 14.

más eficaz y universal para descubrir el verdadero sentido [de la misma] *es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla*". (Énfasis suplido.)([17])

Recientemente —en *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 749 (1992), expresamos que:

> ... *el análisis de la ley debe hacerse teniendo en mente los fines que ésta persigue y de forma tal que la ley se ajuste a la política pública que la inspira.* En el proceso de interpretación no debemos desvincularla del problema cuya solución persigue, *pues tenemos "el deber de hacer que el derecho sirva propósitos útiles y evitar una interpretación tan literal que lleve a resultados absurdos". Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404, 409 (1988). Véanse: *Passalacqua v. Mun. de San Juan*, supra; R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Caps. 36, 39 y 40. *"El medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla."* Art. 19 del Código Civil, 31 L.P.R.A. sec. 19. (Énfasis suplido.)([18])

" 'Debe evitarse una interpretación que ocasione grandes inconveniencias o inequidad, prefiriéndose otra que sea más razonable y justa ... en forma que propicie el sentido y significado razonable deducible de su contenido....' *Román Mayol v. Tribunal Superior*, 101 D.P.R. 807, 811 (1973)." *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816, 820 (1986). La ley se debe interpretar "de la forma que más se ajuste a la intención de la Asamblea Legislativa". *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669, 676 (1987). Véanse: *Díaz*

---

([17]) 31 L.P.R.A. sec. 19.

([18]) Véanse, en adición: *Defendini Collazo et al. v. E.L.A., Cotto*, 134 D.P.R. 28 (1993); *Ind. Cortinera Inc. v. P.R. Telephone Co.*, 132 D.P.R. 654 (1993); *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 D.P.R. 543 (1993); *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76 (1992); *Calderón v. Adm. Sistemas de Retiro*, 129 D.P.R. 1020 (1992); *Vázquez v. A.R.Pe.*, 128 D.P.R. 513 (1991); *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816, 820 (1986); *Pardavco, Inc. v. Srio. de Hacienda*, 104 D.P.R. 65, 71 (1975); *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 785 (1968).

*Marín v. Mun. de San Juan*, 117 D.P.R. 334 (1986); *Passa-lacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985).

## V

■ Con ello en mente, acometemos la encomienda hoy ante nuestra consideración. Una lectura integral de las disposiciones de la antes citada Ley Núm. 139, inclu-yendo su Exposición de Motivos, *nos lleva a la conclusión de que el propósito del referido estatuto es dual, a saber*: reconocer el quehacer o función del corredor de bienes raí-ces como una profesión y el de reglamentar al máximo la misma, como cuestión de política pública, por la importan-cia que la misma tiene en la vida diaria, y bienestar, de la ciudadanía en general.

■ Reconocemos que la referida Ley Núm. 139, en su sec. 3002, ante, habla de la persona que "actúe habitual-mente como intermediario ...". Ello parecería indicar que aquel que actúa aisladamente o infrecuentemente como co-rredor no está cubierto por el estatuto. *No* lo creemos así. El legislador, al aprobar la citada Ley Núm. 139, *expresa-mente identificó a las personas a las que dicho estatuto no le es de aplicación.* A esos efectos, enumeró cuatro (4) ex-cepciones: Véase sec. 3023 de la citada Ley Núm. 139. So-mos del criterio, *y así lo resolvemos*, que únicamente están exceptuados de las disposiciones de la Ley Núm. 139 las personas que cualifican bajo esas cuatro (4) excepciones.

Y es que, realmente, no puede ser de otra forma. Resol-ver lo contrario, a nuestra manera de ver las cosas, impli-caría un absurdo. Tendríamos la insostenible situación de que a unas personas, en protección de la ciudadanía, se le requiere la aprobación de un examen, la prestación de una fianza, y rendir unos informes anuales sobre la labor des-plegada —todo ello con el propósito de garantizar al máximo los derechos y bienes de los ciudadanos que llevan a cabo transacciones de compra y venta de propiedades—

mientras que cualquier otra persona podría ejercer la misma función, sin tener que cumplir con estos rigurosos requisitos, siempre y cuando actuara *ocasionalmente* como corredor. Dicha situación, por ilógica y contradictoria, no es aceptable bajo ningún punto de vista. En resumen, somos del criterio que el legislador no contempló ni tuvo la intención de crear otras excepciones que no fueran las que expresamente estableció en la propia Ley Núm. 139.[19]

Al licenciado Escribá *no* le cobija la excepción, contenida en la sec. 3023 de la Ley, ante, referente "a los abogados en sus relaciones profesionales con sus clientes". El tribunal de instancia específicamente concluyó que éste no era abogado de las antes mencionadas Corporaciones; conclusión con la que no intervendremos en ausencia de demostración de pasión, prejuicio y parcialidad. *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762, 797 (1987).

## VI

Establecido lo anterior, nos resta por resolver si el contrato de corretaje que efectuó el licenciado Escribá es nulo por éste no tener la licencia exigida por ley para ejercer la profesión de corredor de bienes raíces.

El Art. 1207 de nuestro Código Civil, ante, consagra el principio rector de los contratos en Puerto Rico, a saber, la libertad de contratación, al disponer que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, *siempre que no sean contrarios a las leyes, a la moral, ni al orden público*".[20] (Énfasis suplido.)

---

[19] La mención específica de una persona o cosa implica la exclusión de otras personas o cosas, ya sea la mención en forma afirmativa y negativa. Op. Sec. Just. Núm. 1983-19 (reiterando el criterio expuesto en las Ops. Sec. Just. Núm. 1982-2 y Núm. 1974-38.)

[20] Véanse: *Campos del Toro v. Ame. Transit Corp.*, 113 D.P.R. 337 (1982); *Tastee Freez v. Negdo. Seg. Empleo*, 108 D.P.R. 495 (1979); *Borges v. Registrador*, 91 D.P.R. 112 (1964); *Castle Enterprises, Inc. v. Registrador*, 87 D.P.R. 775 (1963).

 Es norma reiterada en nuestra jurisdicción que, conforme las disposiciones del Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391, no existe un contrato sino cuando concurren tres requisitos, a saber: "(1) [c]onsentimiento de los contratantes[;] (2) [o]bjeto cierto que sea materia del contrato[, y] (3) [c]*ausa de la obligación que se establezca.*" (Énfasis suplido.)

 En relación al requisito de causa, cabe hacer alusión al Art. 1227 del Código Civil, 31 L.P.R.A. sec. 3432, que establece que "[l]os contratos sin causa, o con causa ilícita, no producen efecto alguno. *Es ilícita la causa cuando se opone a las leyes o a la moral*".([21]) (Énfasis suplido.) A su vez, el derecho de contratos en nuestro ordenamiento jurídico radica en la "premisa inexorable de que no existe contrato sin causa o cuando la causa es ilícita". *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985).([22]) "Es ilícita la causa cuando se opone a las leyes o a la moral. Se trata de una lesión a un interés general de orden jurídico o moral". *Sánchez Rodríguez v. López Jiménez*, ante, pág. 182. Por su parte, analizando los Arts. 1257 y 1258 del Código Civil, 31 L.P.R.A. secs. 3516 y 3517,([23])

---

([21]) Véanse: *Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197, 217 (1988); *Serra v. Salesian Society*, 84 D.P.R. 322, 333–334 (1961).

([22]) Véanse, en adición: *Julsrud v. Peche de P.R., Inc.*, 115 D.P.R. 18 (1983); *Coop. La Sagrada Familia v. Castillo*, 107 D.P.R. 405, 418 (1978); *Gual v. Sucn. Sobrinos de A. Ribot*, 88 D.P.R. 159, 162–164 (1963); *Hernández Usera v. Srio. de Hacienda*, 86 D.P.R. 13, 18–25 (1962); *Serra v. Salesian Society*, ante; *Rubio Sacarello v. Roig*, 84 D.P.R. 344, 350–353 (1962); *Monserrate v. Lopés*, 80 D.P.R. 491, 501–503 (1958); *Guzmán v. Guzmán*, 78 D.P.R. 673, 676–678 (1955); *Corporación Azucarera v. Junta Azucarera*, 77 D.P.R. 397, 409–410 (1954); *Sánchez v. Coll*, 69 D.P.R. 925, 927–930 (1949); *Fernández v. Laloma*, 56 D.P.R. 367, 375–381 (1940); *Log. "Cab. de Agueynaba" v. Log. "Cab. de Phydias"*, 47 D.P.R. 528, 533–535 (1934); *Saavedra v. Saavedra*, 46 D.P.R. 232, 234 (1934); *González Rodríguez v. Fumero*, 38 D.P.R. 556, 562–573 (1928); *Rivera v. Rivera et al.*, 24 D.P.R. 172, 173 (1916); *Fransceschi et al. v. Sambolín et al.*, 10 D.P.R. 114, 119–121 (1906).

([23]) Los referidos artículos rezan:

"*Sec. 3516. —Ilegalidad que constituye delito o falta*

"Cuando la nulidad provenga de ser ilícita la causa u objeto del contrato, si el hecho constituye un delito o falta común a ambos contratantes, carecerán de toda acción entre sí, y se procederá contra ellos, dándose además a las cosas o precio que hubiesen sido materia del contrato, la aplicación prevenida en el Código Penal, [Título 33,] respecto a los efectos o instrumentos del delito o falta.

este Foro ha resuelto que "una vez determinada la ilicitud de la causa, el contrato es nulo e inexistente". *Sánchez Rodríguez v. López Jiménez*, ante.

 En cuanto al significado de "causa ilícita", en *Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197, 217 (1988), adoptamos la definición propuesta por Díez-Picazo, a los siguientes efectos:

> "Hay, pues, dos tipos de causa ilícita: *la causa ilegal, que se opone a las leyes, y la causa inmoral, llamada también "causa torpe", que se opone a la moral y buenas costumbres.*
>
> [C]abe aplicar la idea de causa ilícita en todos aquellos casos en que el contrato per se sea lícito y lo que le tiña de ilícito sea la finalidad empírica propuesta por las partes ....
>
> *Es ilícita la causa no sólo cuando el contrato per se es prohibido, sino cuando mediante él se trata de ocasionar a otra un daño o un perjuicio* ... cuando se pretende cometer un fraude .... (Énfasis suplido.) Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial, op. cit.*, pág. 168." (Énfasis suplido y en el original.)

 Acorde con los fundamentos y la doctrina antes esbozada, concluimos que la causa del contrato aquí en controversia *no* es lícita. La misma es contraria a la ley ya que la antes citada Ley Núm. 139, y su Reglamento, sancionan a las personas que no poseen licencia de corredor de

---

"Esta disposición es aplicable al caso en que sólo hubiere delito o falta de parte de uno de los contratantes; pero el no culpado podrá reclamar lo que hubiese dado, y no estará obligado a cumplir lo que hubiera prometido."

"*Sec. 3517. — Cuando la causa torpe no constituyere delito o falta*

"Si el hecho en que consiste la causa torpe no constituyere delito ni falta, se observarán las reglas siguientes:

"(1) Cuando la culpa esté de parte de ambos contratantes, ninguno de ellos podrá repetir lo que hubiera dado a virtud del contrato, ni reclamar el cumplimiento de lo que el otro hubiese ofrecido.

"(2) Cuando esté de parte de un solo contratante, no podrá éste repetir lo que hubiese dado a virtud del contrato, ni pedir el cumplimiento de lo que se le hubiera ofrecido. El otro, que fuera extraño a la causa torpe, podrá reclamar lo que hubiera dado, sin obligación de cumplir lo que hubiera ofrecido."

bienes raíces y ejercen la profesión,[24] disponiéndose que la práctica de la profesión de corredor sin licencia, constituye delito menos grave (20 L.P.R.A. sec. 3024). Siendo el contrato uno con causa ilícita, a la luz de lo dispuesto por nuestro Código Civil y nuestra jurisprudencia, el contrato de corretaje *es nulo, inexistente, sin efecto alguno.*[25] En consecuencia, forzoso es concluir que el licenciado Escribá *no* tiene derecho a recobrar la comisión que reclama por la gestión efectuada como supuesto corredor de bienes raíces.[26]

La ilegalidad antes mencionada libera a las corporaciones demandantes de cualquier obligación contraída, conforme lo establece nuestro Código Civil en el Art. 1257 (31 L.P.R.A. sec. 3516), el cual establece:

---

[24] En la jurisdicción federal se ha resuelto que un sólo acto es suficiente para activar los requisitos de posesión de licencia. *Baron & Co., Inc. v. Bank of New Jersey*, 504 F. Supp. 1199, 1209 (D.N.J. 1981).

[25] Véase *Ruiz v. Mendez*, 86 F. Supp. 29, 31 (D.P.R. 1949), donde a estos efectos se dispuso lo siguiente:

"The general rule laid down by the weight of authority is that where a statute declares that it shall be unlawful to perform certain acts thereby prohibited without a license, and imposes a penalty for violation, contracts for the performance of such acts, are necessarily void and incapable of enforcement, and this without reference to whether the act is to protect the public or merely to raise revenue. 30 A.L.R. 841; Johnston v. Dahlgren, 166 N.Y. 354, 59 N.E. 987."

En adición, véanse: *Manufacturer's National Bank of Detroit v. Hartmeister*, 411 F.2d 173 (10mo. Cir. 1969); *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143 (9no Cir. 1986); *Wickersham v. Harris*, 313 F.2d 468 (10mo Cir. 1963); *Dunn v. Phoenix Village, Inc.*, 213 F. Supp. 936 (E.D. Ark. 1963).

[26] A los mismos efectos, como norma general, en la jurisdicción federal se ha resuelto consistentemente que —en los estados que se requiere por ley una licencia para ejercer la profesión de corredor de bienes raíces— una persona que negocie la venta de una propiedad haciendo las funciones de un corredor, tiene que poseer la licencia requerida para poder cobrar la comisión de corretaje sobre esa venta. Véanse: *Shinberg v. Bruk*, 875 F.2d 973 (1er Cir. 1989); *Consul Ltd. v. Solide Enterprises, Inc.*, ante; *Rubin v. University of Minnesota*, 653 F.2d 351 (8vo Cir. 1981); *Dorman v. Pan-American Investments, Inc.*, 625 F.2d 605 (5to Cir. 1980); *Wickersham v. Harris*, ante; *Schultz v. Palmer Welloct Tool Corp.*, 207 F.2d 652 (3er Cir. 1953); *Rabin v. Prenzler*, 451 N.E.2d 1331 (Ill. App. 1er Dist. 1983); *Rubenson v. MSI Real Estate, Etc.*, 438 N.E.2d 1202 (Ill. App. 1982); *Krause v. Boraks*, 67 N.W.2d 202 (1954); *Lucientes v. Bartholomae Oil Corporation*, 149 P.2d 28 (Cal. 1944); *McShane v. Quillin*, 277 P. 554 (Idaho 1929).

En adición, para un análisis más detallado sobre el derecho a cobrar una comisión, véase G. Palmer, *The Law of Restitution*, Ed. Little, Brown and Co., 1978, Vol. II, Sec. 8.3, págs. 180–187.

*Sec. 3516. — Ilegalidad que constituye delito o falta*

Cuando la nulidad provenga de ser ilícita la causa u objeto del contrato, si el hecho constituye un delito o falta común a ambos contratantes, carecerán de toda acción entre sí, y se procederá contra ellos, dándose además a las cosas o precio que hubiesen sido materia del contrato, la aplicación prevenida en el Código Penal, [Título 33,] respecto a los efectos o instrumentos del delito o falta.

Esta disposición es aplicable al caso en que sólo hubiere delito o falta de parte de uno de los contratantes; pero el no culpado podrá reclamar lo que hubiese dado, y no estará obligado a cumplir lo que hubiera prometido.

En vista del análisis antes expuesto, concluimos que siendo los actos del demandado contrarios a la ley, y adoleciendo el contrato de causa ilícita, procede como cuestión de derecho declarar nulo el contrato de corretaje en controversia y, por ende, forzosamente concluir que el demandado licenciado Escribá no tiene derecho a cobrar la comisión por corretaje que reclama.[27]

Procede, en consecuencia, la revocación de la sentencia dictada el 21 de diciembre de 1987 por el Tribunal Superior de Puerto Rico, Sala de San Juan.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García disintió por cuanto la prueba no controvertida refleja que la intervención del Lcdo. Antonio R. Escribá en la venta fue aislada, por lo cual no le aplican las definiciones y limitaciones de

---

[27] A pesar de que el licenciado Escribá no levanta la doctrina de enriquecimiento injusto en su alegato ante este Tribunal, la misma no puede ser invocada por el licenciado Escribá en contra de las Corporaciones en controversia, ya que hemos resuelto que "[l]a doctrina del enriquecimiento injusto no es invocable cuando su efecto es vulnerar un principio encarnado en la Constitución o las leyes del país". *Plan Bienestar Salud v. Alcalde Cabo Rojo*, 114 D.P.R. 697, 703 (1983). Véase *Hatton v. Mun. de Ponce*, 134 D.P.R..1001 (1994). La aplicación de la referida doctrina al caso de autos violaría el propósito de la Ley para Reglamentar la Profesión de Corredor de Bienes Raíces en Puerto Rico; por lo tanto, no procede su aplicación.

En relación con los conceptos generales de la doctrina del enriquecimiento injusto, véanse: *E.L.A. v. Soto Santiago*, 131 D.P.R. 304 (1992), *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817 (1988); *Morales v. Municipio de Toa Baja*, 119 D.P.R. 682 (1987).

la Ley Núm. 139 de 14 de junio de 1980 que reglamenta la profesión de bienes raíces. El Juez Asociado Señor Fuster Berlingeri disintío sin opinión escrita. Los Jueces Asociados Señora Naveira de Rodón y Señor Alonso Alonso se inhibieron.